## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF DELAWARE

JACKIE NICHOLS,                          )
                                         )
            Plaintiff,                   )
                                         )
       v.                                )        C.A. No. 1:15-cv-00602-GMS
                                         )
THE CITY OF REHOBOTH BEACH,              )
SAM COOPER and SHARON LYNN,              )
                                         )
            Defendants.                  )

## DEFENDANTS' OPENING BRIEF IN SUPPORT OF THEIR
## MOTION TO DISMISS THE AMENDED COMPLAINT

OF COUNSEL:

BAIRD MANDALAS BROCKSTEDT LLC
Glenn C. Mandalas (#4432)
Aaron C. Baker (#5588)
6 South State Street
Dover, DE 19901
Tel: 302-677-0061
glenn@bmbde.com
acb@bmbde.com

*Solicitors for the City of The
City of Rehoboth Beach Delaware*

Dated: August 26, 2015

CONNOLLY GALLAGHER LLP
Arthur G. Connolly, III (#2667)
Max B. Walton (#3876)
Ryan P. Newell (#4744)
N. Christopher Griffiths (#5180)
The Brandywine Building
1000 West Street, 14th Floor
Wilmington, DE 19801
Tel: 302-757-7300
aconnolly@connollygallagher.com
mwalton@connollygallagher.com
rnewell@connollygallagher.com
cgriffiths@connollygallagher.com

*Attorneys for Defendants*

## TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ...................................................................................... iii

NATURE AND STAGE ............................................................................................ 1

SUMMARY OF ARGUMENT ................................................................................... 1

STATEMENT OF FACTS ........................................................................................ 3

    I.    The Delaware General Assembly Established The Law That The City
        Must Follow In The Charter ........................................................................... 3

        A.    The Delaware General Assembly Established The Special
                Referenda Election Process .............................................................. 3

        B.    The Delaware General Assembly Defined What Constitutes A
                "Resident" For Voting Purposes ...................................................... 4

    II.    The Voters Authorized The Bond Issuance And Plaintiff Raised A Late
        Challenge ....................................................................................................... 4

STANDARD OF REVIEW ........................................................................................ 6

ARGUMENT .......................................................................................................... 6

    I.    The Post-Election Challenge To The Special Referenda Election Is Too
        Late ............................................................................................................... 6

        A.    The Claim For Invalidation Of The Election Is Too Late Because
                The Challenged Voting Provisions Have Been Law For Decades ............. 7

        B.    The Request To Invalidate The Election Is Too Late Because
                Plaintiff Failed To Raise Any Objection During The Lengthy Pre-
                Election Process ............................................................................. 8

    II.    There Are No Claims Alleged Against Lynn and Cooper ....................................... 9

    III.    The City Is Not A Proper Defendant ................................................................. 10

    IV.    Plaintiff Lacks Standing To Challenge The Voting Provisions In The
        Charter .......................................................................................................... 11

        A.    Plaintiff Lacks Standing Because She Was Not Injured .......................... 12

        B.    Plaintiff Lacks Standing Because Her Claims Are Not Redressable ........ 12

i

V.      The Newspaper Advertisement Was Within The City's Authority ...................... 14

VI.     The Court Should Abstain Until The State Constitutional Issues Are
        Decided By The Delaware Courts ........................................................ 16

        A.      There Are Uncertain Issues Of State Law Underlying The Federal
                Claims. ............................................................................ 17

        B.      Resolution Of The State Law Issues Will Substantially Narrow Or
                Eliminate The Federal Constitutional Questions ........................ 18

        C.      Important State Policies Are At Issue ...................................... 18

CONCLUSION............................................................................................ 20

## TABLE OF AUTHORITIES

**Cases**                                                                                                                       **Page**

*Acierno v. Haggerty,*
   No. 04 1376 KAJ, 2005 WL 3134060 (D. Del. Nov. 23, 2005)............................................ 12

*Al. Libertarian Party v. City of Birmingham,*
   694 F. Supp. 814 (N.D. Ala. 1988) ................................................................................ 14, 15

*AT&T Commc'ns of N.J., Inc. v. Verizon N.J., Inc.,*
   No. 00-2000, 2001 WL 1343964 (3d Cir. Nov. 1, 2001) ...................................................... 13

*Barthelems v. Morris,*
   342 F. Supp. 153 (D. Md. 1972) ............................................................................................ 9

*Bell Atl. Corp. v. Twombly,*
   550 U.S. 544 (2007) ................................................................................................................ 6

*Bell v. Southwell,*
   376 F.2d 659 (5th Cir. 1967) ................................................................................................. 6

*Bellotti v. Baird,*
   428 U.S. 132 (1976) .............................................................................................................. 17

*Berg v. Obama,*
   586 F.3d 234 (3d Cir. 2009) ........................................................................................... 11, 13

*Board of Regents of the Univ. of Wis. Sys. v. Southworth,*
   529 U.S. 217 (2000) .............................................................................................................. 15

*Carlson v. Richie,*
   830 N.W.2d 887 (Minn. 2013) ........................................................................................... 7, 8

*Chez Sez III Corp. v. Twp. of Union,*
   945 F.2d 628 (3d Cir. 1991) ................................................................................................ 17

*City of Meridian v. Southern Bell Tel. & Tel. Co.,*
   358 U.S. 639 (1959) ........................................................................................................ 16, 17

*Cook v. Baca,*
   95 F. Supp. 2d 1215 (D. N.M. 2000) .................................................................................. 15

*Courtney v. Goltz,*
   736 F.3d 1152 (9th Cir. 2013) ............................................................................................ 19

*Cristina v. Dep't of State of N.Y.,*
   417 F. Supp. 1012  (S.D.N.Y. 1976) .................................................................................. 17

*Danvers Motor Co., Inc. v. Ford Motor Co.*,
    432 F.3d 286 (3d Cir. 2005) ................................................................ 12

*Davis v. Williams*,
    495 F. Supp. 2d 453 (D. Del. 2007) .......................................................... 9

*Dobson v. Dunlap*,
    576 F. Supp. 2d 181 (D. Me. 2008) .......................................................... 9

*FCC v. League of Women Voters of Cal.*,
    468 U.S. 364 (1984) ............................................................................ 15

*Fulani v. Hogsett*,
    917 F.2d 1028 (7th Cir. 1991) ................................................................ 8

*Gagliardi v. Kratzenberg*,
    No. 05-4602, 2006 WL 1525380 n.3 (3d Cir. June 5, 2006) ...................... 12

*Georgevich v. Strauss*,
    772 F.2d 1078 (3d Cir. 1985) ................................................................ 19

*Gjersten v. Bd. of Election Comm'rs*,
    791 F.2d 472 (7th Cir. 1986) ................................................................ 13

*Grode v. Mutual Fire, and Inland Ins. Co.*,
    8 F.3d 953 (3d Cir. 1993) ..................................................................... 16

*Harden v. Christina Sch. Dist.*,
    924 A.2d 247 (Del. Ch. 2007) ............................................................... 18

*Hendon v. N.C. State Bd. of Elections*,
    710 F.2d 177 (4th Cir. 1983) ...................................................... passim

*Hindes v. Castle*,
    740 F. Supp. 327 (D. Del. 1990) ............................................................. 6

*Johnson v. Del. Dep't. of Labor*,
    C.A. No. 12 653 GMS, 2014 WL 3828439 (D. Del. Aug. 1, 2014) ............... 6

*Keisling v. Renn*,
    425 F. App'x 106 (3d Cir. 2011) ........................................................... 12

*Keller v. State Bar of Cal.*,
    496 U.S. 1 (1990) ............................................................................... 15

*Kelley v. City of Dover*,
    300 A.2d 31 (Del. Ch. 1972) ................................................................ 18

*Kidwell v. City of Union,*
    462 F.3d 620 (6th Cir. 2006) ................................................................. 15

*Knox v. Milwaukee Cty. Bd. Of Election Comm'rs,*
    581 F. Supp. 399 (E.D. Wis. 1984) ........................................................ 9

*KZPZ Broad., Inc. v. Black Canyon City Concerned Citizens,*
    13 P.3d 772 (Ariz. Ct. App. 2000) ......................................................... 18

*Lujan v. Defenders of Wildlife,*
    504 U.S. 555 (1992) ....................................................................... 12, 13

*Lux v. Judd,*
    651 F.3d 396 (4th Cir. 2011) .................................................................. 12

*Lyng v. Nw. Indian Cemetery Protective Ass'n,*
    485 U.S. 439 (1988) ............................................................................... 19

*Maddox v. Wrightson,*
    421 F. Supp. 1249 (D. Del. 1976) ........................................................... 9

*McDaniel v. Bd. of Ed. of City of Chicago,*
    956 F. Supp. 2d 887 (N.D. Ill. 2013) ................................................. 10, 11

*McKinney v. Superior Court,*
    124 Cal. App. 4th 951 (2005) .............................................................. 7, 8

*Mortensen v. First Fed. Sav. and Loan Ass'n,*
    549 F.2d 884 (3d Cir. 1977) .................................................................. 11

*N.J. Peace Action v. Bush,*
    379 F. App'x 217 (3d Cir. 2010) ............................................................ 13

*Office of Hawaiian Affairs v. Cayetano,*
    6 P.3d 799 (Haw. 2000) ........................................................................... 6

*Phila. City Council v. Schweiker,*
    40 F. App'x 672 (3d Cir. 2002) .......................................................... 17, 19

*Pierce v. Drobny,*
    777 N.W.2d 322 (Neb. 2010) ................................................................... 7

*Pleasant Grove City v. Summum,*
    555 U.S. 460 (2009) ............................................................................... 15

*Polo v. Cuyahoga City. Bd. Of Elections,*
    656 N.E.2d 1277 (Ohio 1995) .................................................................. 9

*Presbytery of N.J. of the Orthodox Presbyterian Church v. Whitman,*
   99 F.3d 101 (3d Cir. 1996) ............................................................................. 17

*Putter v. Montpelier Public Sch. Sys.,*
   697 A.2d 354 (Vt. 1997) ............................................................................ 6, 13

*Railroad Commission of Texas v. Pullman Co.,*
   312 U.S. 496 (1941) ............................................................................. 2, 4, 6, 16

*Reetz v. Bozanich,*
   397 U.S. 82 (1970) ......................................................................... 16, 18, 19

*Romero v. Coldwell,*
   455 F.2d 1163 (5th Cir. 1972) ......................................................... 16, 17

*Rosenberger v. Rector & Visitors of Univ. of Va.,*
   515 U.S. 819 (1995) ........................................................................... 15

*Ross v. State Bd. of Elections,*
   876 A.2d 692  (Md. 2005) .................................................................. 7

*Samuel v. Virgin Islands Joint Bd. of Elections,*
   Civil No. 2012-0094, 2013 WL 106686 (V.I. Jan. 6, 2013) ............................ 7, 13

*Scott v. DiGuglielmo,*
   615 F. Supp. 2d 368 (E.D. Pa. 2009) ................................................... 10

*Simon v. Town of Seaford,*
   197 A. 681 (Del. 1938) .......................................................................... 10

*Soules v. Kauaians for Nukolii Campaign Comm.,*
   849 F.2d 1176 (9th Cir. 1988) .......................................................... passim

*State of Delaware v. Penn Cent. Corp.,*
   445 A.2d 939 (Del. Super. Ct. 1982) ...................................................... 10

*Steel Co. v. Citizens for a Better Env't,*
   523 U.S. 83 (1998) ............................................................................. 13

*SWT Acquisition Corp. v. TW Servs., Inc.,*
   700 F. Supp. 1323 (D. Del. 1988) .......................................................... 19

*Toney v. White,*
   488 F.2d 310 (5th Cir. 1973) ................................................................... 7

*Town of Lockport, N.Y. v. Citizens for Cmty. Action at the Local Level, Inc.,*
   430 U.S. 259 (1977) ............................................................................. 18

*Tucker v. Buford,*
   603 F. Supp. 276 (N.D. Miss. 1985)......................................................................... 7

*W. Va. Citizens Defense League v. City of Martinsburg*, C.A.
   No. 3:11–CV–5, 2011 WL 4074684 (N.D. W. Va. Sept. 13, 2011).......................... 19

*Warth v. Seldin,*
   422 U.S. 490 (1975)............................................................................................... 12

*West v. Minner*, No. Civ. A.
   03-359,2005 WL 549551 (D. Del. Mar. 8, 2005) ....................................................... 9

*Williams v. Rhodes,*
   393 U.S. 23 (1968).................................................................................................. 8

*Zazanis v. Jarman,*
   1990 WL 58158 (Del. Super. Ct. Mar. 20, 1990) ..................................................... 18

**Rules**

Fed. R. Civ. P.  12(b)(6)........................................................................................... 1, 6

**Statutes**

22 *Del. C.* § 22 ..................................................................................................... 10

60 Del. Laws ch. 622 ............................................................................................... 7

68 Del. Laws ch. 40 ................................................................................................. 7

City of Lewes Charter § 20(e) ................................................................................ 19

City of Rehoboth Charter........................................................................... passim

City of Seaford Charter § 35 .................................................................................. 19

Town of Bowers Charter § 27................................................................................. 19

Town of Camden Charter § 30................................................................................ 19

Town of Georgetown Charter § 5.9 ........................................................................ 19

Town of Millsboro Charter § 34 ............................................................................. 19

Town of Ocean View Charter § 3.115 ..................................................................... 19

Town of Smyrna Charter § 13.3 ............................................................................. 19

## NATURE AND STAGE

On July 16, 2015, Plaintiff Jackie Nichols ("Plaintiff"), a resident of Rehoboth Beach, Delaware (the "City"), filed a Complaint. D.I. 1. On July 30, 2015, the City, its Mayor Sam Cooper ("Cooper"), and its Manager Sharon Lynn ("Lynn;" along with the City and Cooper, the "Defendants") moved to dismiss the Complaint. D.I. 6. Pursuant to a stipulation between the parties, Plaintiff agreed to amend its Complaint and the City withdrew its motion. D.I. 8.

On August 12, 2015, Plaintiff filed an Amended Complaint. D.I. 9. Plaintiff's Amended Complaint arises out of a resolution passed by the Commissioners of the City, pursuant to its Charter, which established a date for a special election referendum for voters to consider, among other things, the issuance of a general obligation bond for a capital project concerning a proposed ocean outfall project (the "Ocean Outfall Project"). D.I. 9 at ¶ 8. The City then purchased a newspaper advertisement encouraging residents to vote in favor of the Ocean Outfall Project (the "Newspaper Advertisement"). *Id.* at ¶ 28. On June 27, 2015, the special referenda election was held ("the Special Referenda Election") and the voters elected to authorize the issuance of the bond. *Id.* at ¶¶ 9, 15.

This is the Defendants' brief in support of their motion to dismiss Plaintiff's Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(6).

## SUMMARY OF ARGUMENT

1.    ***The challenge to the City's Special Referenda Election is too late***.  A party challenging an election on the basis of pre-election activity cannot wait for the results of the election before bringing a challenge.  The post-election request to invalidate the Special Referenda Election is time-barred.

2.      *Plaintiff has failed to make any allegations against Cooper or Lynn.*  The four causes of action are directed at the City alone.  Cooper and Lynn should be dismissed from this action.

3.      *The State is the real party in interest*.  Ultimately, Plaintiff is challenging the constitutionality of the Charter – a State law passed by the Delaware General Assembly that binds the City.  The injunctive relief sought cannot lie against the City because the City cannot redress the alleged harm.  Thus, the State is the real party in interest.

4.      *Plaintiff lacks standing*.  Plaintiff's challenge to a six-month residency requirement in the Charter fails because she suffered no injury – she was never denied the opportunity to vote in the Special Referenda Election.  Plaintiff further lacks standing because her request to invalidate the Special Referenda Election was filed post-election and is not redressable. Thus, the Court lacks jurisdiction to hear the challenge.

5.      *The City did not exceed its authority in paying for an advertisement in support of the Special Referenda Election.*  Government entities are permitted to expend funds to publicly endorse their own referenda.  Thus, Count IV of the Amended Complaint should be dismissed.

6.      *If the case is not otherwise dismissed, the Court should abstain and stay the case*.  Under the *Pullman* abstention doctrine set forth in *Railroad Commission of Texas v. Pullman Co.*, 312 U.S. 496, 501 (1941) (the "*Pullman* Doctrine"), the Court should consider staying the case until the important Delaware State law issues are resolved by the Delaware State Courts.

## STATEMENT OF FACTS[1]

**I.     THE DELAWARE GENERAL ASSEMBLY ESTABLISHED THE LAW THAT THE CITY MUST FOLLOW IN THE CHARTER**

This case involves a challenge to a municipal referendum conducted by the City for the issuance of a bond for the Ocean Outfall Project discussed above.  In conducting the Special Referenda Election, the City adhered to its Charter, which is attached as Exhibit A (hereafter, cited as "Charter at __").  The City's Charter is a State law passed by the Delaware General Assembly.   It is a law the City is required to adhere to and Plaintiff does not allege that the Defendants failed to follow the Charter.  Specifically, through the Charter, the Delaware General Assembly has established both the process that the City must follow and who may vote in a special referenda election.

### A.     The Delaware General Assembly Established The Special Referenda Election Process

The Charter requires the following lengthy and detailed process when conducting a special referenda election:

- The City Commissioners must pass a resolution proposing the amount of money to be borrowed and establishing a public hearing;

- Publication of the public hearing in a newspaper of general circulation at least one week before the public hearing;

- Following the public hearing, the Commissioners must then pass a resolution establishing a special election, to be held within 60 days of the public hearing for the purpose of "voting for or against the proposed loan;"

- The time and place of the special election is then published in at least two issues of a newspaper of general circulation; and

---

[1]     For the limited purpose of Defendants' Motion to Dismiss, Defendants accept the facts as pled in the Amended Complaint.

- In the special election, every property owner (whether an individual, partnership, or corporation) and every person who is not a property owner but is a resident has the right to vote in the election.

*See* Charter at § 40.

### B. The Delaware General Assembly Defined What Constitutes A "Resident" For Voting Purposes

The Charter provides that a "resident" of the City may vote in City special elections. D.I. 9 at ¶ 10. A "resident" is "an individual actually residing and domiciled in the City of Rehoboth Beach for a period of 6 months immediately preceding the date of the election." *Id.* at ¶ 11; Charter § 7(d) (the "Residency Requirement"). In addition, the Delaware General Assembly has afforded entity property owners the ability to vote on bond referendum questions (Charter § 40(h); the "Entity Voting Provision"), but not in a general election to elect candidates for Commissioner (Charter § 7(d)).

## II. THE VOTERS AUTHORIZED THE BOND ISSUANCE AND PLAINTIFF RAISED A LATE CHALLENGE

On April 27, 2015, the Commissioners of the City ordered a special referenda election to vote on, among other things, a bond issuance proposal for the Ocean Outfall Project. D.I. 9 at ¶¶ 8, 15. Before the Special Referenda Election, the City paid for the Newspaper Advertisement. *Id.* at ¶ 28. Placed in a local newspaper, it encouraged voters to vote in favor of the bond issuance for the Ocean Outfall Project. *Id.*

The Special Referenda Election[2] was conducted on June 27, 2015. *Id.* at ¶ 9. Voters who satisfied the Charter's definition of "resident" were allowed to vote. *Id.* at ¶¶ 12-15. When the

---

[2]      In the Amended Complaint, Plaintiff vacillates between use of "Special Election" and "Special Meeting" in reference to the vote that occurred on June 27, 2015. Defendants' use of "Special Referenda Election" encompasses both references.

voting closed, the bond issuance for the Ocean Outfall Project passed by a vote of 637 to 606 votes. *Id.* at ¶ 15.

After this lengthy process, on July 16, 2015, Plaintiff filed this suit challenging the Special Referenda Election. D.I. 1. In the Amended Complaint, Plaintiff alleges that she is "a resident, property owner and taxpayer of the City . . . ." D.I. 9 at ¶ 1. Beyond this reference in the first paragraph of the Amended Complaint, there is no additional reference to Plaintiff's connection to the Special Referenda Election or the Ocean Outfall Project throughout the balance of the Amended Complaint. Despite the benefit of having seen Defendants' initial motion to dismiss, Plaintiff has not alleged that: (1) she was denied the opportunity to vote in the Special Referenda Election, or (2) any other resident or property owner was denied an opportunity to vote.

Nonetheless, Plaintiff has alleged four causes of action in the Amended Complaint and has named the City, Cooper (*id.* at ¶ 3) and Lynn (*id.* at ¶ 4) as Defendants. In Counts I and II, Plaintiff alleges that by imposing the Residency Requirement, the City violated the Fourteenth Amendment of the United States Constitution. *Id.* at ¶¶ 16-23. For relief, Plaintiff requests that the Special Referenda Election be declared void and that the City be enjoined from further imposing the Residency Requirement or issuing the bonds. *Id.* at ¶¶ 18, 21, 23. In Count III, she alleges that the City, by allowing entities to vote pursuant to the Entity Voting Provision, violated the Fourteenth Amendment of the United States Constitution. *Id.* at ¶¶ 24-26. For relief, Plaintiff requests that the Special Referenda Election be declared void and that the issuance of bonds for the Ocean Outfall Project be enjoined. *Id.* at ¶ 26. Count IV alleges that the City's payment for the Newspaper Advertisement exceeded its express or implied power under Delaware State law. *Id.* at ¶¶ 27-29. As a result, Plaintiff requests a declaratory judgment

5

that the Newspaper Advertisement expenditure was illegal and in excess of authority. *Id.* at Request for Relief ¶ d.

## STANDARD OF REVIEW

Under Rule 12(b)(6), a complaint shall be dismissed for failure to state a claim upon which relief can be granted. The Court must accept all factual allegations in a complaint as true and take them in the light most favorable to the non-moving party.[3]  However, the "[f]actual allegations" in the complaint "must be sufficient to 'raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact).'"[4]

## ARGUMENT

### I.    THE POST-ELECTION CHALLENGE TO THE SPECIAL REFERENDA ELECTION IS TOO LATE

Plaintiff seeks the "drastic if not staggering remedy" of invalidation of a municipal referendum election.[5]  This remedy, which is only exercised in "extraordinary" circumstances,[6] is unavailable in this case because Plaintiff failed to bring suit prior to the election.[7]

The law "imposes a duty on parties having grievances based on discriminatory practices to bring their complaints forward for preelection adjudication" and this is true even when

---

[3]      *Johnson v. Del. Dep't. of Labor,* C.A. No. 12 653 GMS, 2014 WL 3828439, at *2 (D. Del. Aug. 1, 2014) (granting motion to dismiss).

[4]      *Id.* at *3 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

[5]      *Soules v. Kauaians for Nukolii Campaign Comm.*, 849 F.2d 1176, 1180 (9th Cir. 1988) (quoting *Bell v. Southwell*, 376 F.2d 659, 662 (5th Cir. 1967) (holding that invalidation of an election is a staggering remedy)).  *Soules* was cited at length by this District in the case of *Hindes v. Castle*, 740 F. Supp. 327 (D. Del. 1990).

[6]      *Putter v. Montpelier Public Sch. Sys.*, 697 A.2d 354, 357 (Vt. 1997); *Office of Hawaiian Affairs v. Cayetano*, 6 P.3d 799, 805 (Haw. 2000).

[7]      *See Hendon v. N.C. State Bd. of Elections*, 710 F.2d 177, 182 (4th Cir. 1983).

constitutional violations are alleged.[8]  "[O]ne cannot wait on the outcome of an election to decide whether to complain about a preliminary error."[9]    The "failure to require pre-election adjudication would 'permit, if not encourage, parties who could raise a claim 'to lay by and gamble upon receiving a favorable decision of the electorate' and then, upon losing, seek to undo the ballot results in a court action."[10]  For this reason, Courts do not allow an election participant "to ambush an adversary or subvert the election process by intentionally delaying a request for remedial action to see first whether they will be successful at the polls."[11]

A.    **The Claim For Invalidation Of The Election Is Too Late Because The Challenged Voting Provisions Have Been Law For Decades**

The failure of Plaintiff to bring a challenge *prior* to the Special Referenda Election is nothing more than "sandbagging on the part of [a] wily plaintiff[]."[12]  Plaintiff's strategy of delay is evident because both the Residency Requirement and the Entity Voting Provision have been prescribed by statute for years.  Indeed, entity voting for municipal bond referendums was put in place by the General Assembly in 1976 (60 Del. Laws ch. 622), and the six-month residency requirement was put in place by the General Assembly in 1991 (68 Del. Laws ch. 40).

---

[8]    *Soules,* 849 F.2d at 1180-81; (quoting *Samuel v. Virgin Islands Joint Bd. of Elections,* Civil No. 2012-0094, 2013 WL 106686, at *8 (V.I. Jan. 6, 2013)).

[9]    *Pierce v. Drobny*, 777 N.W.2d 322, 326 (Neb. 2010).  *See also Tucker v. Buford*, 603 F. Supp. 276, 279 (N.D. Miss. 1985) (finding that when a party fails to seek pre-election relief, and when no extraordinary circumstances exist, they are held to waive any right to challenge the election); *McKinney v. Superior Court,* 124 Cal. App. 4th 951, 960 (2005) (holding that persons cannot pass up a pre-election remedy in favor of a post-election challenge); *Ross v. State Bd. of Elections*, 876 A.2d 692, 706 (Md. 2005) (filing a challenge three days after the election deemed time-barred); *Carlson v. Richie,* 830 N.W.2d 887, 892 (Minn. 2013) ("[P]etitioners cannot wait until *after* elections are over to raise challenges that could have been addressed *before* the election.") (italics in original).

[10]    *Hendon,* 710 F.2d at 182 (quoting *Toney v. White*, 488 F.2d 310, 314 (5th Cir. 1973)).

[11]    *Ross,* 876 A.2d at 706.

[12]    *Soules,* 849 F.2d at 1180.

Where, as here, the voting requirements challenged have been on the books for decades, a post-election challenge to the voting rules established by the General Assembly is time-barred because Plaintiff had an ample opportunity to bring the challenge well before the election.[13] Plaintiff's post-Special Referenda Election challenge is too late.[14]

### B.     The Request To Invalidate The Election Is Too Late Because Plaintiff Failed To Raise Any Objection During The Lengthy Pre-Election Process

This post-election suit to invalidate the Special Referenda Election should also be rejected as time-barred because Plaintiff had ample opportunity to raise her claims *during* the Special Referenda Election process yet failed to do so. A public hearing was held on April 27, 2015 and a resolution was passed establishing the date of the Special Referenda Election. D.I. 9 at ¶ 8. The Special Referenda Election was held on June 27, 2015. *Id.* at ¶ 9. Plaintiff does not allege that she made *any* pre-election claim that the voting procedures were invalid. There is no claim that any complaint or grievance was filed with any Election Official (Charter § 40(k)), nor did Plaintiff seek to take any appeal to the City's Board of Elections (Charter § 20), or seek relief from the Delaware Office of Civil Rights and Public Trust, the Delaware Election Commissioner, or any other tribunal.

It is well settled that even pre-election suits that are filed in close proximity to an election cannot be used to invalidate an election.[15] At no time in the several months before the Special

---

[13]     *See Hendon,* 710 F.2d at 182 (holding that when the regulations the appellants challenged were in place since 1955, and the appellants introduced no evidence why they could not have challenged the constitutionality of these laws before the 1982 election, the request to invalidate the election was time-barred); *McKinney,* 124 Cal. App. 4th at 960 (holding that even if a party is unaware of an allegedly invalid charter provision, the results of the election cannot be found invalid  because such a result is "untenable" and such a result would "seriously destabilize . . . [applicable] election law.").

[14]     *See Soules,* 849 F.2d at 1180-81; *Carlson,* 830 N.W.2d at 892.

[15]     *See Williams v. Rhodes,* 393 U.S. 23, 35 (1968); *Fulani v. Hogsett,* 917 F.2d 1028, 1031 (7th Cir. 1991) (holding that claims barred by laches when plaintiff filed suit three weeks before the election to challenge decisions of the Secretary of State made public eleven weeks prior).

Referenda Election did Plaintiff *ever* assert any objection to the Charter's voting procedures – even though the Special Referenda Election was widely publicized. As even a belated *pre*-election challenge would not have invalidated the City's Special Referenda Election (*supra* n.15), certainly a *post*-election challenge when Plaintiff had ample opportunity to challenge the voting requirements established by the General Assembly "comes too late for this Court to grant equitable relief...."[16]

## II.    THERE ARE NO CLAIMS ALLEGED AGAINST LYNN AND COOPER

The Amended Complaint fails to state a claim as to Cooper and Lynn. Beyond identifying them as parties in the introductory paragraphs, the Amended Complaint fails to make a singular subsequent reference to either. Rather, the four causes of actions are alleged violations by the City. D.I. 9 at ¶¶ 16-29. Likewise, beyond the perfunctory requests for attorneys' fees and "such other and further relief as the Court deems just and fair," each request for relief seeks either a declaratory judgment from this Court that the City committed some violation or injunctive relief barring the City from taking further action. *Id.* at Requests for Relief ¶¶ a-d. Having failed to state a claim against Cooper and Lynn, the Amended Complaint should be dismissed as to them.[17]

---

*See also Dobson v. Dunlap*, 576 F. Supp. 2d 181, 188 (D. Me. 2008) (citing cases and holding laches barred constitutional challenge to a state election law filed two months before election); *Knox v. Milwaukee Cty. Bd. Of Election Comm'rs*, 581 F. Supp. 399, 406-07 (E.D. Wis. 1984) (citing cases and denying injunction filed only seven weeks before the election); *Barthelems v. Morris*, 342 F. Supp. 153, 160 (D. Md. 1972) (suit challenging congressional districts filed eight weeks before the election deemed barred by laches); *Polo v. Cuyahoga City. Bd. Of Elections*, 656 N.E.2d 1277, 1279 (Ohio 1995) (holding that seventeen day delay in asserting a challenge deemed to time bar an election challenge).

[16]    *Maddox v. Wrightson,* 421 F. Supp. 1249, 1252 (D. Del. 1976); *Soules,* 849 F.2d at 1180-81; *Hendon,* 710 F.2d at 182.

[17]    *Davis v. Williams*, 495 F. Supp. 2d 453, 456 (D. Del. 2007) (granting motion to dismiss; when there "are absolutely no allegations against [a party]…" the Complaint will have failed to state a claim upon which relief can be granted.); *see also West v. Minner*, No. Civ. A. 03-359,2005 WL 549551, at *1 (D. Del. Mar. 8, 2005).

### III.    THE CITY IS NOT A PROPER DEFENDANT

The Complaint against the City should be dismissed because the proper defendant is the State of Delaware.  The Charter is a State law passed by the General Assembly.  The City, therefore, did not establish the voting requirements at issue.  It merely followed the statutory framework promulgated by the General Assembly in conducting the Special Referenda Election.

A municipality cannot act in contravention of its Charter.[18]  The General Assembly is the only legislative body with the power to change the Charter's voting provisions.[19]  Because the State passed the challenged provisions, the State is the real party in interest.  An injunction cannot lie against the City for the State's law.[20]

This principle is best illustrated by *McDaniel v. Bd. of Ed. of City of Chicago*, 956 F. Supp. 2d 887 (N.D. Ill. 2013).  In that case, the plaintiff sought to enjoin the defendants, which included the Chicago Board of Education (the "Board") and the City of Chicago ("Chicago"), from closing her children's school.[21]  The Court dismissed Chicago from the action because the legislature had empowered the Board, not Chicago, with the authority to close schools.[22]  Even if

---

[18]    *Simon v. Town of Seaford*, 197 A. 681, 685 (Del. 1938) ("It is well settled in this State that a municipal corporation has no power except by express legislative grant, or by fair and necessary implication because of being incident to the powers expressly granted or essential to carrying them out."); *State of Delaware v. Penn Cent. Corp.*, 445 A.2d 939, 946 (Del. Super. Ct. 1982) (holding that a municipal corporation has no power except as provided by legislative grant).

[19]    The City of Rehoboth Beach is not a "Home Rule" municipality established pursuant to Title 22, Chapter 8 of the Delaware Code.  As such, it has no power to amend its Charter absent an act of the General Assembly.

[20]    *Scott v. DiGuglielmo*, 615 F. Supp. 2d 368, 373 (E.D. Pa. 2009) ("If the defendants have no power to redress the alleged injuries even if the court were to grant the requested relief, the plaintiff has no case or controversy against those particular defendants.").

[21]    *Id.* at 893-94.

[22]    *Id.* at 894.

the plaintiff prevailed against the City and the Court granted injunctive relief, "the City would lack the power to carry out the injunction."[23]

The City respectfully submits that same result should occur in this case. If there is an infirmity with the Special Referenda Election procedure, it can only be cured by the State. The City has no power to change the Charter or override the express legislative intent of the General Assembly in construing the unambiguous language of the Charter. Inherently, the City is being sued for a law that it did not pass and for following procedures over which it has no direct control. Thus where, as here, Plaintiff does not claim that the City violated the express requirements of its Charter, and where the suit only challenges the requirements established by the General Assembly, all claims against the City should be dismissed.

## IV.    PLAINTIFF LACKS STANDING TO CHALLENGE THE VOTING PROVISIONS IN THE CHARTER

"Absent Article III standing, a federal court does not have subject matter jurisdiction to address a plaintiff's claims."[24] "A prerequisite of standing is that the litigant has suffered or will suffer an injury in fact that is caused by the complained-of conduct by a defendant and that can be redressed by the court."[25] Plaintiff here can show neither injury nor redressability.

---

[23]    *Id.*

[24]    *Berg v. Obama*, 586 F.3d 234, 242 (3d Cir. 2009). Because standing is a jurisdictional question, it is properly evaluated under Rule 12(b)(1). Under Rule 12(b)(1), "no presumptive truthfulness attaches to plaintiff's allegations," and Plaintiff has the burden to prove that jurisdiction exists. *Mortensen v. First Fed. Sav. and Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977).

[25]    *Berg*, 586 F.3d at 239.

## A.    Plaintiff Lacks Standing Because She Was Not Injured

"One of the elements of constitutional standing to bring suit is a concrete injury personal to the plaintiff."[26]   As the Fourth Circuit recently held,"'[t]he purest reason to deny' voter standing 'is that the plaintiff is not able to show an injury to the voter interest, however much the plaintiff may feel offended by the challenged practice.'"[27]

Here, there has been no injury.  Plaintiff is a property owner in the City, D.I. 9 at ¶ 1, and has been since at least 2011.  Exhibit B (Plaintiff's deed).[28]  Plaintiff had the right to vote as a property owner and there is no allegation that Plaintiff was denied the right to vote in the Special Referenda Election due to the six-month residency requirement.  Because Plaintiff was not denied the opportunity to vote in the Special Referenda Election due to or because of the six-month residency requirement, she suffered no concrete injury and lacks standing to mount a challenge.  Her lack of injury and standing divests this Court of Article III jurisdiction.[29]

## B.    Plaintiff Lacks Standing Because Her Claims Are Not Redressable

Even if Plaintiff was injured (which she was not) to meet her burden of demonstrating standing, she must establish that her claims are redressable.[30]  She cannot.  For a claim to be redressable, "it must be likely, as opposed to merely speculative, that the injury will be redressed

---

[26]    *Keisling v. Renn*, 425 F. App'x 106, 109 (3d Cir. 2011) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 & n.1 (1992)).

[27]    *Lux v. Judd*, 651 F.3d 396, 400 (4th Cir. 2011).

[28]    *Gagliardi v. Kratzenberg*, No. 05-4602, 2006 WL 1525380, at *1 n.3 (3d Cir. June 5, 2006) (taking judicial notice of recorded deed when affirming lower court's grant of a motion to dismiss); *Acierno v. Haggerty*, No. 04 1376 KAJ, 2005 WL 3134060, at *6 (D. Del. Nov. 23, 2005) (holding that a court may take judicial notice of public documents on a motion to dismiss).

[29]    *See Warth v. Seldin*, 422 U.S. 490, 503 (1975) ("Petitioners must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent.").

[30]    *See Danvers Motor Co., Inc. v. Ford Motor Co.*, 432 F.3d 286, 291 (3d Cir. 2005).

by a favorable decision."[31]  "Relief that does not remedy the injury suffered cannot bootstrap a plaintiff into federal court; that is the very essence of the redressability requirement."[32]

The relief that Plaintiff seeks is unavailable. D.I. 9 at Request for Relief ¶¶ b-c.  As to the entirety of the Amended Complaint, any alleged injury cannot be redressed because Plaintiff's post-election challenge is time-barred.[33]  Specifically, the enjoining of the Residency Requirement is unavailable because, as stated above, the City has no choice but to follow State law and the State is the proper party for any injunctive relief. *See supra* at 10-11.

Because the relief sought cannot remedy (or redress) the alleged injury suffered, Plaintiff lacks standing which divests this Court of jurisdiction to hear her claim.[34]

---

[31]    *Lujan*, 504 U.S. at 560–61.

[32]    *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 107 (1998).

[33]    *Hendon*, 710 F.2d at 182; *Soules*, 849 F.2d at 1180-81; *see also supra* n.15.  Moreover, the remedy of invalidation of an election is not available unless violations are pervasive enough "to affect or change the result of the election[.]" *Samuel*, 2013 WL 106686, at *3.  Indeed, Plaintiffs must demonstrate that the alleged unconstitutional practice has a "significant impact on the particular election they seek to have declared invalid." *Gjersten v. Bd. of Election Comm'rs*, 791 F.2d 472, 479 (7th Cir. 1986); *Putter v. Montpelier Public Sch. Sys.*, 697 A.2d 354, 357 (Vt. 1997).  Plaintiff bears the burden of establishing that alleged election irregularities "affect or change the result of the election by the questioned votes." *Samuel*, 2013 WL 106686, at *3 (citations omitted).  The Amended Complaint in this case is devoid of any allegation that the results of the election would have been different "but for" the challenged conduct – likely because Plaintiff is unable to do so.  The Ocean Outfall Project referendum passed by a thirty-one vote margin. D.I. 9 at ¶ 15.  As Plaintiff did not allege that the outcome of the election would have been different if alternate voting procedures were employed, she has no viable claim to challenge (let alone invalidate) the results of the Special Referenda Election.

[34]    *Steel Co.*, 523 U.S. at 107; *see also AT&T Commc'ns of N.J., Inc. v. Verizon N.J., Inc.*, No. 00-2000, 2001 WL 1343964 (3d Cir. Nov. 1, 2001) (finding no redressability when there is "no appropriate remedy"); *Berg*, 586 F.3d at 242 (holding that standing is jurisdictional); *N.J. Peace Action v. Bush*, 379 F. App'x 217, 223 (3d Cir. 2010) (holding that where claims are not redressable "[a] judicial declaration of unconstitutionality would be, at best, an advisory opinion not sufficient to redress any of Plaintiffs' claimed injuries.").

## V.    THE NEWSPAPER ADVERTISEMENT WAS WITHIN THE CITY'S AUTHORITY

When a government entity calls for a special referenda election to vote on whether funds should be allocated for a common cause that benefits a government entity and its citizens, it has the right to expend funds – including taxpayer money – to publicly endorse its proposed measures.[35] Thus, the City's decision to take out the Newspaper Advertisement in support of the Ocean Outfall Project was within the City's right to do even if taxpayer funds were used. Thus, the Newspaper Advertisement was not beyond the City's authority, express or implied.

The analogous facts in *Alabama Libertarian Party* undercut Plaintiff's claim. There, the City of Birmingham ("Birmingham") held two special elections, including one for the approval of a bond issuance.[36] Before the election, Birmingham launched a promotional campaign consisting of a newspaper advertisement, radio advertisements, and brochures, all of which advocated voters to vote for the bond issuance.[37] The plaintiffs, members of the Alabama Libertarian Party, alleged that the promotional efforts were impermissibly funded by Birmingham taxpayer funds and that the message violated their First Amendment rights.[38]

The court dismissed the plaintiffs' claims. While government entities may be forbidden from spending funds to advocate for a certain vote in citizen initiative proposals concerning a "political" or "ideological" purpose, where the government entities calls for a special election "related to the common needs of all citizens" it may promote that cause.[39] Because "virtually every public expenditure will 'to some extent involve a use of public money as to which some taxpayers may object' . . . this does not mean that those taxpayers have a constitutionally

---

[35]    *Al. Libertarian Party v. City of Birmingham*, 694 F. Supp. 814 (N.D. Ala. 1988).
[36]    *Id.* at 815.
[37]    *Id.*
[38]    *Id.*
[39]    *Id.* at 817.

14

protected right to enjoin such expenditures."[40]   Cities are not "forbidden to publicize and seek

public support for their own governmental proposals."[41]   If they were, it would hinder their

ability to function:

> It would be a strange system indeed which would allow the City to
> determine its needs, allow it to adopt ordinances calling for
> elections to fulfill those needs, allow it to bear the expense of those
> elections, and then require it to stand silently by before the issues
> are voted on.   Obviously, the City is not neutral under such
> circumstances and should not be required to appear so.[42]

Accordingly, the Newspaper Advertisement was within the City's authority and Count IV should

be dismissed.

---

[40]     *Id.* at 818 (citing *FCC v. League of Women Voters of Cal.*, 468 U.S. 364, 385 n.16
(1984)).   Taxpayers who disapprove of the issues proposed by special elections have recourse:
"(1) They may dissent at the polls on the issues involved and (2) they may dissent at the polls
when City officials seek re-election."   *Id.* at 820.   A delinquent post-election in Court is not
among the remedies available.

[41]     *Id.*

[42]     *Id.* at 821.   *See also Rosenberger v. Rector & Visitors of Univ. of Va.*, 515 U.S. 819, 833
(1995) ("when the government appropriates public funds to promote a particular policy of its
own it is entitled to say what it wishes."); *Pleasant Grove City v. Summum*, 555 U.S. 460, 468
(2009) (citing *Keller v. State Bar of Cal.*, 496 U.S. 1, 12–13 (1990)) (a government entity has
"freedom to express its views"); *Kidwell v. City of Union*, 462 F.3d 620, 623, 625-26 (6th Cir.
2006) (citing *Board of Regents of the Univ. of Wis. Sys. v. Southworth*, 529 U.S. 217, 229
(2000)) ("[t]he needs of effective governance command that the bar limiting government speech
be high;" "[t]he government, as a general rule, may support valid programs and policies by taxes
or other exactions binding on protesting parties."); *Cook v. Baca*, 95 F. Supp. 2d 1215, 1228-29
(D. N.M. 2000) (finding that the government is not barred "from placing a non-neutral message
regarding a tax initiative for the city's welfare….").

## VI.    THE COURT SHOULD ABSTAIN UNTIL THE STATE CONSTITUTIONAL ISSUES ARE DECIDED BY THE DELAWARE COURTS

If the case is not otherwise dismissed for the reasons stated above, the Court should abstain from deciding the case until the State law questions underlying the Amended Complaint are resolved. To be clear, in her Amended Complaint, Plaintiff dropped the two counts from her original Complaint alleging that the Residency Requirement and the Entity Voting Provision violated the Delaware Constitution of 1897. *See* D.I. 1 at ¶¶ 24-29. But, the Fourteenth Amendment challenges that remain in the Amended Complaint (*e.g.*, the entity voting issue) raise important, unsettled questions under Delaware State law that should be resolved by a Delaware State Court.

When a Federal court is presented with important questions of State law, and the determination of the State law issues would obviate the necessity of deciding Federal constitutional issues, the Federal court may abstain from hearing an action through a stay or dismissal.[43]  Indeed, "[p]roper exercise of federal jurisdiction requires that controversies involving unsettled questions of state law be decided in the state tribunals preliminary to a federal court's consideration of the underlying federal constitutional questions . . . . That is especially desirable where the questions of state law are enmeshed with federal questions . . . ."[44]

*Pullman* abstention "is appropriate" where, as here, the State law has not been construed and "is susceptible of a construction by the state judiciary which might avoid in whole or in part the necessity for federal constitutional adjudication, or at least materially change the nature of

---

[43]    *Pullman*, 312 U.S. at 501; *Romero v. Coldwell*, 455 F.2d 1163, 1167 (5th Cir. 1972); *Grode v. Mutual Fire, and Inland Ins. Co.*, 8 F.3d 953, 956 (3d Cir. 1993) (Federal courts "should abstain from rendering a decision 'when difficult and unsettled questions of state law must be resolved before a substantial federal constitutional question can be decided.'").

[44]    *Reetz v. Bozanich*, 397 U.S. 82, 85 (1970); *City of Meridian v. Southern Bell Tel. & Tel. Co.*, 358 U.S. 639, 640-41 (1959).

the problem."[45] *Pullman* abstention is also appropriate even if (as here) there is no pending State court action.[46]

*Pullman* abstention is applied in "special circumstances."[47] The three elements of the "special circumstances" test are:

    (1)   There are uncertain issues of State law underlying the Federal constitutional claims brought in Federal court;

    (2)   The State law issues are amenable to a state court interpretation that would obviate the need for, or substantially narrow, the scope of adjudication of the constitutional claims; and

    (3)   A Federal court's erroneous construction of State law would be disruptive of important state policies.[48]

Each of these elements is satisfied in this case.

## A.    There Are Uncertain Issues Of State Law Underlying The Federal Claims

The crux of the controversy here are State law questions that have never been heard or decided by the Delaware State Courts[49] – namely whether property owner entities, such as corporations, may be permitted by statute to vote in a municipal referendum election. While other courts have held that corporations are "citizens" for the purpose of municipal referenda

---

[45]   *Phila. City Council v. Schweiker,* 40 F. App'x 672, 675 (3d Cir. 2002) (quoting *Bellotti v. Baird,* 428 U.S. 132, 147 (1976)).

[46]   *Romero,* 455 F.2d at 1167 ("The policies furthered by abstention cannot by circumvented merely by the plaintiff's selecting a federal forum to the exclusion of the state forum"); *City of Meridian v. Southern Bell Tel. & Tel. Co.,* 358 U.S. at 640-41; *Cristina v. Dep't of State of N.Y.,* 417 F. Supp. 1012, 1018 (S.D.N.Y. 1976) ("abstention does not depend upon a pending state action").

[47]   *Presbytery of N.J. of the Orthodox Presbyterian Church v. Whitman,* 99 F.3d 101, 106 (3d Cir. 1996).

[48]   *Phila. City Council,* 40 F. App'x at 675 (citing *Chez Sez III Corp. v. Twp. of Union,* 945 F.2d 628, 631 (3d Cir. 1991)); *see also Presbytery of N.J. of the Orthodox Presbyterian Church,* 99 F.3d at 106-07.

[49]   Because Plaintiff lacks standing to challenge the six-month residency requirement, the crux of the issue relates to property owner, entity voting.

elections,[50] and while it is well settled that voting requirements in a "single shot" referendum election are allowed to be different than in a general election for representative candidates,[51] Delaware State Courts have not (to our knowledge) decided the State law questions at issue here. Under these circumstances, Delaware State law is certainly uncertain.

**B.    Resolution Of The State Law Issues Will Substantially Narrow Or Eliminate The Federal Constitutional Questions**

Resolution of the important State law question of whether property owner entities, such as corporations, may be permitted by statute to vote in a municipal referendum election will narrow, eliminate, or possibly resolve the Federal constitutional questions.   These issues are unquestionably enmeshed with the Federal constitutional questions,[52] and if an entity property owner is permitted to participate in a referendum election, there is no violation of the one person one vote principal.   In such circumstances, the Fourteenth Amendment claims need not be decided prior to a State court resolution of the State law issues.

**C.    Important State Policies Are At Issue**

A decision on the State law questions could conceivably impact referendum requirements in numerous Charters passed by the Delaware General Assembly – and could have an impact on entity voting provisions already in place in the Charters of several Delaware municipalities.   The Delaware General Assembly has included municipal bond referendum provisions in the Charters

---

[50]    *KZPZ Broad., Inc. v. Black Canyon City Concerned Citizens*, 13 P.3d 772, 775 (Ariz. Ct. App. 2000).   Delaware law holds that a corporation may be a citizen for certain purposes, and makes clear that "statutory and constitutional provisions must be construed to determine whether their benefits were intended to be conferred on corporations." *Kelley v. City of Dover*, 300 A.2d 31, 38 (Del. Ch. 1972).   Delaware Courts have held that reference to a "citizen" in a statute can be "meant to include a corporation." *Harden v. Christina Sch. Dist.*, 924 A.2d 247, 267 n.120 (Del. Ch. 2007).   Indeed,"[s]tatutory and constitutional provisions that utilize the term 'citizen' "must be construed to determine if their benefits were intended to be conferred on corporations." *Zazanis v. Jarman*, 1990 WL 58158, at *3 (Del. Super. Ct. Mar. 20, 1990).

[51]    *Town of Lockport, N.Y. v. Citizens for Cmty. Action at the Local Level, Inc.*, 430 U.S. 259, 266-72 (1977).

[52]    *See* D.I. 9 ¶¶ 15-26; *Reetz*, 397 U.S. at 85.

of several municipalities.[53]    Because the ability to vote in a bond referendum invokes an important State policy, special circumstances are present and abstention is warranted.[54]

******

"A fundamental and long-standing principle of judicial restraint requires that courts avoid reaching constitutional questions in advance of the necessity of deciding them."[55]    Because a decision on the State law questions could conceivably avoid a decision on the Federal issues, this is a quintessential case where *Pullman* abstention should be invoked in the Court's discretion.[56]

---

[53]    Charter of the Town of Bowers § 27; Charter of the Town of Camden § 30; Charter of The Town of Smyrna § 13.3; Charter of the Town of Georgetown § 5.9; Charter of The City of Lewes § 20(e); Charter of the Town of Ocean View § 3.115; Charter of the City of Seaford § 35; Charter of the Town of Millsboro § 34.

[54]    *See  Phila. City Council,* 40 F. App'x at 678 (holding that where the action is not a straightforward voting rights case, abstention is appropriate).

[55]    *SWT Acquisition Corp. v. TW Servs., Inc.,* 700 F. Supp. 1323, 1328 (D. Del. 1988) (quoting *Lyng v. Nw. Indian Cemetery Protective Ass'n,* 485 U.S. 439, 445 (1988)).

[56]    *Georgevich v. Strauss,* 772 F.2d 1078, 1082 (3d Cir. 1985) (holding that "unsettled question of state law, the resolution of which would affect the decision of a federal constitutional issue," are subject to *Pullman* abstention and vacating the District Court's decision and remanding "so that the district court can retain jurisdiction but abstain from resolution of the state law issue until the state judiciary has been afforded a fair opportunity to do so."); *Reetz,* 397 U.S. at 87 (holding that the lower court should have deferred, under the *Pullman* doctrine because a State court decision construing the state constitution and regulatory scheme "could conceivably avoid any decision under the Fourteenth Amendment and would avoid any possible irritant in the federal-state relationship.").  *See also W. Va. Citizens Defense League v. City of Martinsburg,* C.A. No. 3:11–CV–5, 2011 WL 4074684, at *1-3 (N.D. W. Va. Sept. 13, 2011); *Courtney v. Goltz,* 736 F.3d 1152, 1163-64 (9th Cir. 2013).

## CONCLUSION

For the reasons stated above, Defendants respectfully request that Plaintiff's Amended

Complaint be dismissed with prejudice or, in the alternative, stayed under the *Pullman* doctrine.

CONNOLLY GALLAGHER LLP

OF COUNSEL:

BAIRD MANDALAS BROCKSTEDT LLC
Glenn C. Mandalas (#4432)
Aaron C. Baker (#5588)
6 South State Street
Dover, DE 19901
Tel: 302-677-0061
glenn@bmbde.com
acb@bmde.com

*Solicitors for the City of The*
*City of Rehoboth Beach Delaware*

Dated: August 26, 2015

/s/ *Max B. Walton*
Arthur G. Connolly, III (#2667)
Max B. Walton (#3876)
Ryan P. Newell (#4744)
N. Christopher Griffiths (#5180)
The Brandywine Building
1000 West Street, 14th Floor
Wilmington, DE 19801
Tel: 302-757-7300
aconnolly@connollygallagher.com
mwalton@connollygallagher.com
rnewell@connollygallagher.com
cgriffiths@connollygallagher.com

*Attorneys for Defendants*