IN THE UNITED STATES DISTRICT COURT
DISTRICT OF DELAWARE

JACKIE NICHOLS,                              )
                                             )
                      Plaintiff,             )
                                             )
          v.                                 )        C.A. No. 15-602 GMS
                                             )
CITY OF REHOBOTH BEACH,                      )
SAM COOPER and SHARON LYNN,                  )
                                             )
                      Defendants.            )


**ANSWERING BRIEF OF PLAINTIFF JACKIE NICHOLS
IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**


David L. Finger (DE Bar ID #2556)
Finger & Slanina, LLC
One Commerce Center
1201 N. Orange St., 7th floor
Wilmington, DE  19801-1186
(302) 573-2525
Attorney for Defendant-below/Appellant
Marc Hazout


Dated:   September 9, 2015

## TABLE OF CONTENTS

NATURE AND STAGE OF THE PROCEEDINGS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

SUMMARY OF ARGUMENTS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

STATEMENT OF FACTS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

I.      MS. NICHOLS CAN BRING A POST-VOTE CHALLENGE. . . . . . . . . . . . . . . . . . . 5

        A.      MS. NICHOLS HAD NO KNOWLEDGE OF HER CLAIM. . . . . . . . . . . . . . . 7

        B.      DEFENDANTS MADE NO SHOWING OF PREJUDICE. . . . . . . . . . . . . . . . 8

II.     MS. NICHOLS HAS STANDING TO MAINTAIN THIS ACTION. . . . . . . . . . . . . . . 9

        A.      AS A REHOBOTH TAXPAYER, MS. NICHOLS HAS SUFFERED INJURY
                THROUGH THE IMPROPER USE OF TAX REVENUES. . . . . . . . . . . . . . . . 9

        B.      MS. NICHOLS' CLAIMS ARE REDRESSABLE. . . . . . . . . . . . . . . . . . . . . . 11

III.    DEFENDANTS ARE ALL PROPER PARTIES TO THIS ACTION. . . . . . . . . . . . . . 13

        A.      REHOBOTH. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

        B.      CITY MANAGER LYNN AND MAYOR COOPER. . . . . . . . . . . . . . . . . . . 14

        C.      THE STATE IS NOT THE REAL PARTY IN INTEREST. . . . . . . . . . . . . . . 15

IV.     THE NEWSPAPER ADVERTISEMENT ALLEGATIONS STATE A CLAIM. . . . . . . 16

V.      ABSTENTION IS NOT WARRANTED AS THE COMPLAINT DOES NOT ASSERT
        ANY VIOLATIONS OF DELAWARE'S CONSTITUTION. . . . . . . . . . . . . . . . . . . . 17

CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

i

# TABLE OF AUTHORITIES

## Cases

*ACLU-NJ v. Township of Wall*, 246 F.3d 258 (3rd Cir. 2001). . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Advantage Media, LLC v. City of Hopkins*, 408 F.Supp.2d 780 (D. Minn. 2006).. . . . . . . . . . . 12

*Alabama Libertarian Party v. City of Birmingham, Alabama*, 694 F.Supp. 814 (N.D. Ala. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Allstate Ins. Co. v. Serio*, 261 F.3d 143 (2d Cir. 2001). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*American Trucking Ass'n, Inc. v. N.Y. Transit Auth.*, ___ F.3d ___, 2015 WL 4619884 (2nd Cir. Aug. 4, 2015) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Ameritel Inns, Inc. v. Greater Boise Auditorium Dist.*, 119 P.3d 624 (Idaho 2005). . . . . . . . . . 16

*Anderson v. City of Belle Glade*, 337 F.Supp. 1353 (S.D. Fla. 1971). . . . . . . . . . . . . . . . . . . . . . 14

*Appalachian Elec. Power Co. v. Town of Galax*, 4 S.E.2d 390 (Va. 1939). . . . . . . . . . . . . . . . . 10

*Arizonans for Official English v. Arizona*, 520 U.S. 43 (1997) . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Bennett v. Mollis*, 590 F.Supp.2d 273 (D.R.I. 2008). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Brennan v. Black*, 104 A.2d 777 (Del. 1954).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Brett v. City of Rehoboth*, 1986 WL 7533 (Del. Ch. June 26, 1986). . . . . . . . . . . . . . . . . . . . . . . 14

*Bulgo v. Maui County*, 430 P.2d 321 (Hawaii 1967).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Burnett v. N.Y. Cent. R. Co.*, 380 U.S. 424 (1965). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Cantor v. Perelman*, 414 F.3d 430 (3rd Cir. 2005). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Carhart v. Steinberg*, 192 F.3d 1142 (8th Cir. 1999), *aff'd*, 530 U.S. 914 (2000). . . . . . . . . . . . 12

*Caudell v. City of Toccoa*, 153 F.Supp.2d 1371 (N.D. Ga. 2001). . . . . . . . . . . . . . . . . . . . . . . . . 13

*Citizens to Protect Public Funds v. Bd. of Educ. of Parsippany-Troy Hills Tp.*, 98 A.2d 673 (N.J. 1953). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

ii

*Coalition for Ed. in Dist. One v. Bd. of Elec. of City of New York*, 370 F.Supp. 42 (S.D.N.Y. 1974)
. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Crampton v. Zabriski*, 101 U.S. 601 (1879). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Cyberworld Enterprise Technologies, Inc. v. Napolitano*, 602 F.3d 189 (3rd Cir. 2010). . . . . . . 8

*Dascola v. City of Ann Arbor*, 22 F.Supp.3d 736 (E.D. Mi. 2014). . . . . . . . . . . . . . . . . . . . . . . 14

*District of Columbia Common Cause v. District of Columbia*, 858 F.2d 1 (D. D.C. 1988). . . . . 11

*Doremus v. Board of Education*, 342 U.S. 429 (1952). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Dunn v. Blumstein*, 403 U.S. 330 (1972). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*DuPont v. Mills*, 196 A. 160 (Del.  1937). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*E.E.O.C. v. Great Atlantic & Pacific Tea Co.*, 735 F.2d 69 (3rd Cir. 1984). . . . . . . . . . . . . . . . . 6

*Elsenau v. City of Chicago*,165 N.E. 129 (Ill. 1929). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Ex Parte Siebold*, 100 U.S. 371 (1879). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Fitchik v. N.J. Transit Rail Operations, Inc.*, 873 F.2d 655 (3rd Cir. 1989). . . . . . . . . . . . . . . . 15

*Fontes v. City of Central Falls*, 660 F.Supp.2d 244 (D.R.I. 2009). . . . . . . . . . . . . . . . . . . . . . . 14

*Frothingham v. Mellon*, 262 U.S. 447 (1923). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 10

*Henley v. Elmore County*, 242 P.2d 855 (Idaho 1952). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Hinrichs v. Bosma*, 410 F. Supp.2d 745 (S.D. Ind. 2006). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Homans v. City of Albuquerque*, 217 F.Supp.2d 1197 (D.N.M. 2002). . . . . . . . . . . . . . . . . . . . 14

*In re Minh Vu Hoang*, 2014 WL 937949 (D. Md. Mar. 10, 2014). . . . . . . . . . . . . . . . . . . . . . . . 7

*J&J Sports Productions, Inc. v. Cal City Post No. 476*, 2011 WL 2946178 (E.D. Cal. July 21, 2011)
. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Kaufhold v. Caiafa*, 872 F.Supp.2d 374 (D.N.J. 2012). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Kentucky v. Graham*, 473 U.S. 159 (1985). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

iii

*Kindem v. City of Alameda*, 502 F.Supp. 1108 (N.D. Ca. 1980). . . . . . . . . . . . . . . . . . . . . . . . . . 14

*King Tonopah Mining Co. v. Lynch*, 232 F. 485 (D. Nev. 1916). . . . . . . . . . . . . . . . . . . . . . . . 7

*Lynch v. Donnelly*, 465 U.S. 668 (1984). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Mayor & Council of the City of Dover v. Kelley*, 327 A.2d 748 (Del. 1974). . . . . . . . . . . . . . . 17

*Mayor & Council of Wilmington v. Dukes*, 157 A.2d 789 (Del. 1960). . . . . . . . . . . . . . . . . . . . 16

*Mayor & Council of Wilmington v. Smentkowski*, 198 A.2d 685 (Del. 1964). . . . . . . . . . . . . . . 16

*McComb v. Superior Court in and for County of Maricopa*, 943 P.2d 878 (Az. App. 1997). . . . . 5

*McDaniel v. Bd. of Educ. of City of Chicago,* 956 F.Supp.2d 887 (N.D. Ill. 2013). . . . . . . . . . . 13

*Mich. Chamber of Commerce v. Land*, 725 F.Supp.2d 665 (W.D. Mich. 2010). . . . . . . . . . . . 6, 8

*Mines v. DelValle,* 257 P. 530 (Cal. 1927). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Missouri Utilities Co. v. City of California, MO*, 8 F.Supp. 454 (W.D. Mo. 1934). . . . . . . . . . . 7

*Nader 2000 Primary Committee, Inc. v. Hechler*, 112 F.Supp.2d 575 (S.D. Va. 2000). . . . . . . 8

*Norwood v. Harrison*, 581 F.2d 518 (5th Cir. 1978). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89 (1984). . . . . . . . . . . . . . . . . . . . . 15

*Shuford v. Ala. St. Bd. of Educ.*, 902 F.Supp. 1233 (M.D. Ala. 1995). . . . . . . . . . . . . . . . . . 6, 8

*Soules v. Kauaians for Nukolii Campaign Committee*, 849 F.2d 1176 (9th Cir. 1988). . . . . . . . 6

*Toll Bros., Inc v. Township of Readington*, 555 F.3d 131 (3rd Cir. 2009). . . . . . . . . . . . . . . . . 11

*Topolewski v. Plankinton Packing Co.*, 126 N.W. 554 (Wis. 1910). . . . . . . . . . . . . . . . . . . . . . . 7

*Tucker v. Burford*, 603 F.Supp. 276 (N.D. Miss. 1985). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 6

*U.S. Fire Ins. Co. v. Asbestospray, Inc.*, 182 F.3d 201 (3rd Cir. 1999). . . . . . . . . . . . . . . . . . 6, 8

*U.S. v. City of Cambridge, MD*, 799 F.2d 137 (4th Cir. 1986). . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*U.S. v. One Toshiba Color Television*, 213 F.3d 147 (3rd Cir. 2000). . . . . . . . . . . . . . . . . . . . . . 8

*University of Pittsburgh v. Champion Products, Inc.*, 686 F.2d 1040 (3rd Cir. 1982). . . . . . . . . . 8

*Vt. Agency of Natural Res. v. United States ex rel. Stevens*, 529 U.S. 765 (2000). . . . . . . . . . . . 11

*Winter v. Colvin*, 2013 WL 5956246 (D. Del. Nov. 7, 2013). . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Wisconsin v. Constantineau*, 400 U.S. 433 (1971). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Working v. Jefferson County Election Com'n*, 2 So.3d 827 (Ala. 2008). . . . . . . . . . . . . . . . . . . . 10

*Zwickler v. Koota*, 389 U.S. 241 (1967). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

## Other authorities

22 Del. C. §801(3). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

22 Del. C. §802. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

29 U.S.C. §2403(b). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

42 U.S.C. §1983. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

D. Del. L.R. 7.1.3(c)(2). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Delaware Supreme Court Rule 41. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

## NATURE AND STAGE OF THE PROCEEDINGS

On July 16, 2015, plaintiff Jackie Nichols filed this action against the City of Rehoboth Beach ("Rehoboth") and its Mayor Sam Cooper and City Manager Sharon Lynn (collectively, "Defendants") pursuant to 42 U.S.C. §1983, alleging federal and state constitutional violations arising from a special election to authorize the issuance of municipal bonds. (D.I. 1).

On July 30, Defendants filed a motion to dismiss the Complaint and opening brief. (D.I. 6, 7). On August 10, 2015, the parties entered into a stipulation whereby Ms. Nichols would submit an amended complaint and Defendants would withdraw their motion to dismiss. (D.I. 8). On August 12, 2015, the Court issued an oral order withdrawing the motion to dismiss.

On August 12, 2015, Ms. Nichols filed her Amended Complaint. (D.I. 9). Defendants filed a motion to dismiss and opening brief on August 26, 2015. (D.I. 10, 11).

This is Ms. Nichols' answering brief in opposition to the motion to dismiss.

## SUMMARY OF ARGUMENTS

1.    Ms. Nichols is not prohibited from bringing a post-vote challenge. Although the Court may consider laches on a motion to dismiss (except where the supporting facts are outside the Complaint), Defendants have not met their heavy burden of showing (i) that Ms. Nichols is deemed in the law to have known or had reason to know of the Charter provisions or constitutional law, or that those provisions were unconstitutional or would be applied in an unconstitutional manner, (ii) that Ms. Nichols delayed unduly, or for tactical advantage, or (iii) that Defendants have suffered prejudice as a result of the delay.

2.    As a Rehoboth taxpayer, Ms. Nichols has standing to challenge the expenditure of tax funds to engage in unlawful acts (such as elections violating the U.S. Constitution and

advertising violating Delaware municipal law), and to challenge Rehoboth's incurring debt through the issuance of bonds (including authorization of same through an unlawful election).

3.    Ms. Nichols' claims are redressable.  By statute, Rehoboth has had the power to amend its Charter for over 25 years.  If the Court declares the provisions of the Charter unconstitutional, such provisions will be deemed void, and Rehoboth will not be subject to those provisions and will be able to comply with an injunction without conflict with the State Legislature.

4.    Rehoboth is a proper defendant, for the reasons stated in No. 3 above.  By enforcing its Charter, Rehoboth is acting under color of law, acting in an unconstitutional manner harming its citizens and taxpayers.

5.    Mayor Cooper and City Manager Lynn are proper defendants.  The Complaint alleges that they are municipal officials responsible for implementing the practices and policies at issue in this Complaint.

6.    The State of Delaware is not the real party in interest, as a decision in this case would not require any payment from the State treasury, would not require the State to act or refrain from acting in any way, and ending an unconstitutional practice would not interfere with public administration.

7.    The allegations regarding the newspaper advertisement state a claim, as under state law municipal governments may not expend taxpayer funds to advocate a position subject to a vote absent express legislative authority, of which none has been shown.

8.    Abstention is not warranted as there are no uncertain issues of State law in this case, and, in any event, if there are the preferred approach is to not abstain but simply certify any such issues to the Delaware Supreme Court.

## STATEMENT OF FACTS

Plaintiff Jackie Nichols is a resident, property owner and taxpayer of the City of Rehoboth Beach, DE. (Compl. ¶1).

Defendant The City of Rehoboth Beach ("Rehoboth") is a municipality created by an Act of the General Assembly of the State of Delaware. (Compl. ¶2).

Defendant Sam Cooper is the Mayor of Rehoboth and is responsible for implementing the policies and practices thereof, specifically the policies at issue in this action. (Compl. ¶3).

Defendant Sharon Lynn is the City Manager of Rehoboth and is responsible for implementing the policies and practices thereof, specifically the policies at issue in this action. (Compl. ¶4).

On April 27, 2015, the Board of Commissioners of Rehoboth adopted a resolution proposing, among other things, the issuance of up to $52,500,000 general obligation bonds of Rehoboth to finance an ocean outfall project (the "Ocean Outfall Project"), and ordering a Special Election to authorize the borrowing of money for that projects. (Compl. ¶5).

Prior to the Special Meeting, Rehoboth, utilizing taxpayer funds (on information and belief), caused to be published in a local newspaper a full-page advertisement exhorting people to "Vote Yes," *i.e.*, in favor of the proposed outfall project, and presenting a one-sided view of the project, without affording opponents the opportunity by means of that financed medium to present their side. (Compl. ¶28).

On June 27, 2015, Rehoboth conducted a "Special Election," to determine, among other things, whether it is authorized to borrow $52,500,000 to finance an "Ocean Outfall Project." The costs of the Special Election were paid from the Rehoboth treasury. (Compl. ¶29).

3

Section 40(h) of the Rehoboth Charter, governing voting procedures for Special Elections to authorize the borrowing of money and issuance of bonds, states as follows:

> At the said Special Election, every owner or leaseholder, as defined in this Charter, of property, whether an individual, partnership or corporation, shall have one vote and every person who is a bona fide resident of the City of Rehoboth Beach, but who is not an owner or leaseholder, as defined in this Charter, of property within the corporate limits of the City of Rehoboth Beach and who would be entitled at the time of holding of the said Special Election to register and vote in the Annual Municipal Election if such Annual Municipal Election were held on the day of the Special Election shall have one vote whether or not such person be registered to vote in the Annual Municipal Election.

(Compl. ¶10).

Section 40 of the Rehoboth Charter does not define the phrase "bona fide resident." Section 7(d) of the Rehoboth Charter, relating to the manner of holding annual elections, states, in pertinent part, that at an annual meeting, to be eligible to vote, the term "resident" means "an individual actually residing and domiciled in the City of Rehoboth Beach for a period of 6 months immediately preceding the date of the election." (Compl. ¶11).

At the Special Meeting, Rehoboth only accepted voters, apart from property owners, who had been residents for a minimum of six months. (Compl. ¶12).

At the Special Meeting, Rehoboth granted the right to vote to residents and then again to those same residents, as well as non-residents, who owned (directly or through an entity) property in Rehoboth. (Compl. ¶13).

At the Special Meeting, corporations and other artificial entities owning property in Rehoboth were permitted to vote.  On information and belief, individuals who owned multiple parcels in Rehoboth through ownership of multiple artificial entities were permitted to vote one time for each property owned through such artificial entities. (Compl. ¶14).

4

After the polls were closed, Rehoboth announced that there were 637 votes in favor of borrowing for the Ocean Outfall Project, and 606 votes against borrowing for the Ocean Outfall Project. (Compl. ¶15).

## ARGUMENT

### I.     MS. NICHOLS CAN BRING A POST-VOTE CHALLENGE.

Defendants argue that a post-vote challenge is prohibited. That is false. *Tucker v. Burford*, 603 F.Supp. 276, 278 (N.D. Miss. 1985) ("the defendant incorrectly asserts that the seeking of pre-election relief is mandatory before a court may void an election and order a special election. The court must consider the failure of the plaintiffs to seek pre-election relief in view of all the facts and circumstances of the case, including whether pre-election relief was available. Furthermore, the *defendants have a heavy burden of showing that the plaintiffs deliberately by-passed pre-election relief,*" citations omitted, italics added). *See also U.S. v. City of Cambridge, MD*, 799 F.2d 137, 141 (4th Cir. 1986) ("[t]he district court apparently construed *Hendon* [relied upon by Defendants here] as establishing a *per se* rule barring special election relief when the plaintiff did not bring a preelection challenge to the election procedures. *Hendon* does not set forth a per se rule; rather, courts must examine each such election case against the general rule established in *Hendon* that a *candidate or other election participants* should not be allowed to ambush an adversary or subvert the election process by intentionally delaying a request for remedial action to see first whether they will be successful at the polls," italics added); *McComb v. Superior Court in and for County of Maricopa*, 943 P.2d 878, 886 (Az. App. 1997) (rejecting *per se* rule).

5

Rather, the cases relied upon by Defendants[1] stand for the proposition that, in considering whether to grant equitable relief, courts may consider the equitable doctrine of laches. *Tucker*, 603 F.Supp. at 278; *Soules v. Kauaians for Nukolii Campaign Committee*, 849 F.2d 1176, 1180 (9th Cir. 1988) (finding laches where plaintiff had knowledge of the facts but failed to act).

Under Third Circuit authority, to bar a claim on the ground of laches, the Court must conclude that (i) Ms. Nichols knew of the claims, (ii) Ms. Nichols lacked a good excuse for not bringing the claims sooner, and (iii) as a result of the delay, Defendants suffered prejudice. *Cantor v. Perelman*, 414 F.3d 430, 439 (3rd Cir. 2005) (applying Delaware law); *U.S. Fire Ins. Co. v. Asbestospray, Inc.*, 182 F.3d 201, 208 (3rd Cir. 1999) (applying federal law). The burden of proof is on Defendants. *E.E.O.C. v. Great Atlantic & Pacific Tea Co.*, 735 F.2d 69, 80 (3rd Cir. 1984). *See also Tucker,* 603 F.Supp. at 278 ("the defendants have a heavy burden of showing that the plaintiffs deliberately by-passed pre-election relief").

Although the Third Circuit cases cited above are not voting cases, the same elements have been cited and applied in such cases. *E.g., Bennett v. Mollis*, 590 F.Supp.2d 273, 275 n.2 (D.R.I. 2008) (rejecting laches when three weeks after vote is not unreasonable and no prejudice found); *Mich. Chamber of Commerce v. Land*, 725 F.Supp.2d 665, 681-82 (W.D. Mich. 2010) (denying laches claim where no showing of prejudice); *Shuford v. Ala. St. Bd. of Educ.*, 902 F.Supp. 1233, 1239-40 (M.D. Ala. 1995) (laches did not preclude claim due to lack of prejudice).

The applicability of laches depends on the circumstances of the case. *Burnett v. N.Y. Cent. R. Co.*, 380 U.S. 424, 435 (1965). When the defense of laches depends on disputed facts, it is

---

[1]

Certain of the cases relied upon by Defendants arise under state statutes containing time limitations to bring election challenges. Defendants do not cite any applicable Delaware statute.

inappropriate to make a determination on a motion to dismiss. *Kaufhold v. Caiafa*, 872 F.Supp.2d 374, 380 (D.N.J. 2012); *In re Minh Vu Hoang*, 2014 WL 937949 at *9 (D. Md. Mar. 10, 2014) ("[b]ecause the merit of the laches defense cannot be conclusively determined based on the face of the amended complaint, the issue cannot be decided on a motion to dismiss").

To the extent defendants rely solely on a *per se* rule that pre-election action is mandatory, such claimed rule has been disproven and the laches claim must fail. In any event, Defendants have not made their case.

### A.    MS. NICHOLS HAD NO KNOWLEDGE OF HER CLAIM.

The circumstances of this case are that Ms. Nichols did not and could not be expected to know of her claims prior to the vote, and defendants have not offered any evidence of prejudice (and consequently have waived the right to do so in reply).

As for Count I (the residency requirement), Defendants effectively ask the Court to presume that Ms. Nichols was aware of the terms of the Charter, and of the decision of the U.S. Supreme Court holding that a three-month residency requirement is unconstitutional. Such presumption is contrary to law. *See King Tonopah Mining Co. v. Lynch*, 232 F. 485, 495 (D. Nev. 1916) ("[t]he presumption that every man knows the law does not hold him to a knowledge of statutes which for any reason are illegal or void..."); *Missouri Utilities Co. v. City of California, MO*, 8 F.Supp. 454, 468 (W.D. Mo. 1934) (citizen not presumed to know statute is unconstitutional).[2] Even if Ms.

---

[2]

"The maxim, 'Every one is presumed to know the law,' does not obtain literally and generally; it is limited by the reason for the rule, *viz.*: to prevent violators of the Criminal Code from escaping punishment on the ground of ignorance of the law and violators of private rights, escaping liability for actual loss thereby inflicted on such ground." *Topolewski v. Plankinton Packing Co.*, 126 N.W. 554 (Wis. 1910).

Nichols was charged with such sophisticated knowledge, then the Court would next have to conclude that Ms. Nichols should have assumed that Defendants were going to violate a facially unconstitutional law. These assumptions strain reason.

As for Count II (disproportionate voting rights), Ms. Nichols had no reason to anticipate that Defendants would interpret Section 40(f) of the Charter to allow individuals who hold multiple entities, each of which owns a separate property in Rehoboth, one vote for each such entity/property. To the contrary, she had the right to presume that government officials will perform their duties in a constitutional manner. Thus, there is no basis to conclude that Ms. Nichols knew or had reason to know that Section 40(f) would be applied in an unconstitutional way.[3]

In *Nader 2000 Primary Committee, Inc. v. Hechler*, 112 F.Supp.2d 575 (S.D. Va. 2000), the court, in rejecting a laches claim, held that while laches may be appropriate where the plaintiff is a candidate deeply involved in election laws:

> Ordinary citizens should not be forced to anticipate and predict possible constitutional violations and be burdened with protecting against them, on pain of losing their rights. Registered voters in West Virginia should not have to sacrifice [constitutional] rights because the State interposed unconstitutional requirements on individuals seeking ballot access, even when such individuals may have failed to act with dispatch to challenge the law.

*Id.* at 579 n.2 (italics in original).

Similarly here, Ms. Nichols should not be charged with the responsibility of anticipating any way Section 40(f) could be manipulated to evade the "one person one vote" rule.

---

[3]

For these same reasons, Defendants' argument that Ms. Nichols is not entitled to relief because the laws have been on the books for years is without merit.

## B.    DEFENDANTS MADE NO SHOWING OF PREJUDICE.

Even if the Court were to find for some reason that Ms. Nichols delayed unreasonably in bringing this action, that alone does not permit the Court to deny relief.  Laches also requires proof of prejudice.  The Third Circuit has repeatedly stated that prejudice is essential for a claim of laches. *E.g., Cyberworld Enterprise Technologies, Inc. v. Napolitano*, 602 F.3d 189, 200 (3rd Cir. 2010) (of laches bars an action "*only* when the delay in bringing the action both caused prejudice and was inexcusable," italics added); *U.S. v. One Toshiba Color Television*, 213 F.3d 147, 157 (3rd Cir. 2000) (prejudice is one of two "essential elements"); *University of Pittsburgh v. Champion Products, Inc.*, 686 F.2d 1040, 1044 (3rd Cir. 1982).

"To establish prejudice, the party raising laches must demonstrate that the delay caused a disadvantage in asserting a claimed right or defense; the mere loss of what one would have otherwise kept does not establish laches." *U.S. Fire Inc. Co.*, 182 F.3d at 208.  *Accord Shuford*, 920 F.Supp. at 1240; *Mich. Chamber of Commerce*, 725 F.Supp.2d at 682.

Defendants did not offer any evidence of prejudice in their opening brief in support of their motion to dismiss (and they are limited to the face of the Complaint), and so have waived the point and are foreclosed from attempting to address it now. D. Del. L.R. 7.1.3(c)(2); *Winter v. Colvin*, 2013 WL 5956246 at *19 n.16 (D. Del. Nov. 7, 2013).

Further, there is no indication of intentional delay or intent to obtain a strategic or tactical advantage.

## II.     MS. NICHOLS HAS STANDING TO MAINTAIN THIS ACTION.

### A.     AS A REHOBOTH TAXPAYER, MS. NICHOLS HAS SUFFERED INJURY THROUGH THE IMPROPER USE OF TAX REVENUES .

Defendants argue that Ms. Nichols lacks standing to maintain this action because she was not denied the right to vote.  This is misdirection.  Ms. Nichols is suing in her capacity as a municipal taxpayer to challenge taxpayer-funded  elections and the resultant authorization of the issuance of municipal debt instruments.

It has been settled law for over 135 years that, unlike restrictions on federal taxpayer standing, municipal  taxpayers have standing to challenge the illegal expenditure of tax money or the illegal creation of municipal debt. Long ago the U.S. Supreme Court decided:

> Of the right of resident taxpayers to invoke the interposition of a court of equity to prevent an illegal disposition of the moneys of the county or the illegal creation of a debt which they in common with other property holders of the county may otherwise be compelled to pay, there is at this day no serious question. The right has been recognized by the state courts in numerous cases; and from the nature of the powers exercised by municipal corporations, the great danger of their abuse and the necessity of prompt action to prevent irremediable injuries, it would seem eminently proper for courts of equity to interfere.

*Crampton v. Zabriski*, 101 U.S. 601, 609 (1879).  The Supreme Court reaffirmed *Crampton* in *Frothingham v. Mellon,* 262 U.S. 447 (1923):

> resident taxpayers may sue to enjoin an illegal use of the moneys of a municipal corporation. The interest of a taxpayer of a municipality in the application of its moneys is direct and immediate and the remedy by injunction to prevent their misuse is not inappropriate. It is upheld by a large number of state cases and is the rule of this court.  Crampton v. Zabriskie, 101 U. S. 601, 609, 25 L. Ed. 1070.

*Id.* at 448. *See also Doremus v. Board of Education*, 342 U.S. 429, 434 (1952).  *See also generally ACLU-NJ v. Township of Wall*, 246 F.3d 258, 262 (3rd Cir. 2001) (discussing municipal taxpayer standing in First Amendment challenge).

When the *Frothingham* Court decided that federal taxpayers did not have standing to challenge federal taxing and spending decisions, it noted with approval prior decisions allowing "resident taxpayers [to] sue to enjoin an illegal use of the moneys of a municipal corporation." 262 U.S. at 486. The Supreme Court distinguished the interest of municipal from federal taxpayer litigants, stating that "[t]he interest of a taxpayer of a municipality in the application of its moneys is direct and immediate and the remedy by injunction to prevent their misuse is not inappropriate." *Id*.

"To support taxpayer standing, the expenditures need not be great...." *Hinrichs v. Bosma*, 410 F. Supp.2d 745, 753 (S.D. Ind. 2006) (citing *Lynch v. Donnelly*, 465 U.S. 668 (1984) (city taxpayers had standing to challenge the $20 per year that a city spent on a Nativity scene)).

Under these principles, there are two independent grounds for standing as a taxpayer. First, Ms. Nichols, having alleged that she is a Rehoboth taxpayer, has standing to challenge the expenditure of tax funds to hold a Special or Annual Meeting under terms that violate the Constitution. *Working v. Jefferson County Election Com'n*, 2 So.3d 827, 832-35 (Ala. 2008); *Bulgo v. Maui County*, 430 P.2d 321, 324 (Hawaii 1967).

Second, Ms. Nichols has standing to challenge the unlawful incurring of municipal debt by issuing bonds to be paid from tax funds. The fact that the illegality arose from an election does not affect the injury to Ms. Nichols as a taxpayer or diminish her standing. In *Appalachian Elec. Power Co. v. Town of Galax*, 4 S.E.2d 390 (Va. 1939), the Virginia Supreme Court cited *Crampton*, and concluded that:

> Whenever a citizen and taxpayer is confronted with the proposition that an illegal election for the issuance of bonds has been held and the issuance of the bonds will result in the imposition of an illegal tax burden upon him, he has the right of election

10

to proceed either in equity to enjoin the issuance of the bonds...or to proceed by filing a petition in the pending matter....

Similarly, in *Henley v. Elmore County*, 242 P.2d 855 (Idaho 1952), the Iowa Supreme Court held that:

[a] taxpayer may contest the result of an election held to determine the question of incurring an indebtedness or as to the issuing of bonds, whether the result is in favor or against the proposition; and such taxpayer is sufficiently interested to maintain such an action to contest the official declaration of the result of such bond election.

*Id.* at 857.

Further, as a taxpayer. Ms. Nichols has standing to challenge the use of tax revenues to challenge expenditures for advertising to influence a bond referendum. *Alabama Libertarian Party v. City of Birmingham, Alabama*, 694 F.Supp. 814, 815-16 (N.D. Ala. 1988); *District of Columbia Common Cause v. District of Columbia*, 858 F.2d 1, 3-4 (D. D.C. 1988).

## B.    MS. NICHOLS' CLAIMS ARE REDRESSABLE.

To satisfy the "redressability" aspect of standing, it is sufficient for Ms. Nichols to establish a "substantial likelihood that the requested relief will remedy the alleged injury in fact." *Toll Bros., Inc v. Township of Readington*, 555 F.3d 131, 143 (3rd Cir. 2009) (quoting *Vt. Agency of Natural Res. v. United States ex rel. Stevens*, 529 U.S. 765, 771 (2000)).

Federal courts have "broad discretionary power to void an election" where the election is found to have violated constitutional rights. *Coalition for Ed. in Dist. One v. Bd. of Elec. of City of New York*, 370 F.Supp. 42, 57 (S.D.N.Y. 1974).

Notwithstanding this, Defendants argue that this Court cannot provide relief in this case because challenged provisions are part of Rehoboth's Charter, which was enacted by the State Legislature, and Rehoboth has no power to contravene the will of the Legislature.

11

This is factually incorrect.  Delaware grants municipalities with populations in excess of 1000 the power to amend their own charters. 22 Del. C. §802.  According to the most recent U.S. Census (2010), Rehoboth has had a population of over 1000 since 1990. (Ex. A hereto).[4]  Thus, Rehoboth has had the option of curing the constitutional defects without Legislative consent for at least 25 years, and so cannot be heard to claim it has no choice.

Moreover, Rehoboth not only could disregard the Charter provision, it had a duty to do so. "[G]overnmental officials are not bound to follow state law when that law is itself unconstitutional. Quite the contrary: in such a case, they are bound *not* to follow state law."  *Carhart v. Steinberg*, 192 F.3d 1142, 1152 (8th Cir. 1999), *aff'd*, 530 U.S. 914 (2000).  The U.S. Supreme Court found a *3*-month county residency requirement to be unconstitutional in 1972. *Dunn v. Blumstein*, 403 U.S. 330 (1972).

In any event, Defendants' argument misses the point entirely.  If this Court declares the relevant provisions of the Charter unconstitutional, then those provisions are deemed void *ab initio*. *Ex Parte Siebold*, 100 U.S. 371, 376-77 (1879); *Advantage Media, LLC v. City of Hopkins*, 408 F.Supp.2d 780, 791 (D. Minn. 2006).  Upon that occurrence, the Court can enjoin Defendants from issuing bonds as a result of an illegal election, and Rehoboth will not be subject to the unconstitutional provisions of its Charter, even though adopted by the State Legislature.  In other words, there will be nothing binding Rehoboth, and nothing subject to enforcement.  The Court can

---

[4]
Exhibit  A  is  excerpted  from  the  federal  census  website. http://www.census.gov/prod/cen2010/cph-1-9.pdf.  The Court may take judicial notice of the federal census website. *J&J Sports Productions, Inc. v. Cal City Post No. 476*, 2011 WL 2946178 at *8 n.5 (E.D. Cal. July 21, 2011).

provide a remedy to Ms. Nichols, and Defendants can comply without any conflict with the State Legislature.[5]

## III.    DEFENDANTS ARE ALL PROPER PARTIES TO THIS ACTION.

### A.    REHOBOTH.

Defendants do not challenge the sufficiency of the pleadings in stating a claim against Rehoboth.  Nor could they.   In *Caudell v. City of Toccoa*, 153 F.Supp.2d 1371 (N.D. Ga. 2001), the plaintiff brought suit against the City of Toccoa under Section 1983, alleging that the Toccoa's enforcement of a legislative act amending Toccoa's charter to change election eligibility requirements was unconstitutional. As to whether Toccoa was a proper defendant, the Court ruled:

> To articulate a cognizable claim under 42 U.S.C. § 1983, "plaintiff must show that a person, acting under color of any statute, ordinance, regulation, custom, or usage, deprived him of a right, privilege, or immunity secured by the Constitution." Plaintiff's § 1983 claims are rooted in alleged violations, by defendant City of Toccoa, of plaintiff's rights under the Equal Protection Clause, the First Amendment, and the Bill of Attainder Clause of the United States Constitution [1-1]. These violations stem from defendant's enforcement of Act No. 163, thus defendant may fairly be characterized as "acting under color" of state law. 42 U.S.C. § 1983 (2001). Further, it is well established that municipalities and other bodies of local government are "persons" subject to suit under § 1983.

---

[5]

*McDaniel v. Bd. of Educ. of City of Chicago,* 956 F.Supp.2d 887 (N.D. Ill. 2013), cited by Defendants, is inapposite because it did not involve a challenge to the constitutionality of the enabling statute.  The Court in that case dismissed the action because the enabling statute would still have been in effect and so, according to that court, would have prevented the defendants from complying with an injunction.  In the present action, a declaration that the relevant Charter provisions are unconstitutional would avoid any similar conflict.

13

*Id.* at 1377 (citations omitted).   Consistent with this, courts have subjected municipalities to injunctive and other relief when provisions of their charters have been challenged as being unconstitutional (including challenges to election laws).[6]

Rehoboth is a municipal corporation.  *Brett v. City of Rehoboth*, 1986 WL 7533 at *2 (Del. Ch. June 26, 1986).  A municipal corporation only exists pursuant to a general or special law of the State of Delaware.  22 Del. C. §801(3).   The Complaint alleges that Rehoboth, a "person" acting under color of law, engaged in and expended tax money on an election and bond authorization in violation of the 14th Amendment to the U.S. Constitution.   Defendants' failure to attack the sufficiency of the pleadings on this point constitutes a waiver of any challenge on this ground.

Instead, Defendants argue that the City is not a proper defendant for reasons extrinsic to the pleads , *i.e.*, because Rehoboth is bound to abide by its Charter and so cannot be subject to a federal injunction to disobey it.  Putting aside serious Supremacy Clause issues that Defendants' position engenders, this argument is refuted at pages 12-13 above, which are incorporated herein.  As such, this argument is without merit.

### B.     CITY MANAGER LYNN AND MAYOR COOPER.

"On the merits, to establish personal liability, in a § 1983 action, it is enough to show that the official, acting under color of state law, caused the deprivation of a federal right." *Kentucky v. Graham*, 473 U.S. 159, 166 (1985).   This applies equally to municipal officials.  *Cruz v. City of Wilmington*, 814 F.Supp. 405, 413 (D. Del. 1993).

---

[6]

*E.g. Dascola v. City of Ann Arbor*, 22 F.Supp.3d 736 (E.D. Mi. 2014); *Fontes v. City of Central Falls*, 660 F.Supp.2d 244 (D.R.I. 2009); *Homans v. City of Albuquerque*, 217 F.Supp.2d 1197 (D.N.M. 2002);  *Kindem v. City of Alameda*, 502 F.Supp. 1108 (N.D. Ca. 1980); *Anderson v. City of Belle Glade*, 337 F.Supp. 1353 (S.D. Fla. 1971).

The Complaint alleges constitutional violations and that Cooper and Lynn are "responsible for implementing the policies and practices thereof, specifically the policies at issue in this action." (Compl. ¶¶3-4). On a motion to dismiss, those allegations must be accepted as true. Those allegations are sufficient in a civil rights action under 42 U.S.C. §1983.

**C.    THE STATE IS NOT THE REAL PARTY IN INTEREST.**

Defendants assert that the State of Delaware is the real party in interest because Rehoboth has no ability to control its own Charter. As shown above, this is incorrect as a matter of fact, as Rehoboth does indeed have that power.

The argument is also incorrect as a matter of law. For the State to be the real party in interest, the judgment must either (i) require that damages being paid from the State treasury, (ii) interfere with public administration, or (iii) restrain the State from acting or compel the State to act. *Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984); *Fitchik v. N.J. Transit Rail Operations, Inc.*, 873 F.2d 655, 659 (3rd Cir. 1989).

Here, Ms. Nichols is not seeking damages (much less from the State), and is not seeking to restrain or compel action by the State. Nor can there be any argument that halting unconstitutional practices interferes with public administration.[7]

---

[7] Additionally, it is well established that the State is not a necessary party to an action merely because the constitutionality of a legislative act is involved. *American Trucking Ass'n, Inc. v. N.Y. Transit Auth.*, ___ F.3d ___, 2015 WL 4619884 at *6-7 (2nd Cir. Aug. 4, 2015) ("[s]tate ... statutes are frequently challenged as unconstitutional without the state...government as a named party"); *Norwood v. Harrison*, 581 F.2d 518, 519 (5th Cir. 1978). The Court can grant the State an opportunity to intervene. 29 U.S.C. §2403(b). Given that Rehoboth has the power to amend its Charter without State approval, such procedure is not necessary in this case.

15

IV.    **THE NEWSPAPER ADVERTISEMENT ALLEGATIONS STATE A CLAIM.**

Count III of the Complaint alleges that Rehoboth exceeded its statutory authority under state law in expending taxpayers funds to advocate a position in a referendum without allowing taxpayers on the other side of the issue the opportunity by means of that financed medium to present their side. (Compl. ¶¶28-29).

Defendants rely on a series of cases addressing First Amendment challenges to such expenditures. Count III, however, is based on state municipal law, not constitutional law. Under state law, such expenditures are improper unless expressly authorized.

For example, in *Citizens to Protect Public Funds v. Bd. of Educ. of Parsippany-Troy Hills Tp.*, 98 A.2d 673 (N.J. 1953), the New Jersey Supreme Court stated:

> the board made use of public funds to advocate one side only of the controversial question without affording the dissenters the opportunity by means of that financed medium to present their side, and thus imperilled the propriety of the entire expenditure. The public funds entrusted to the board belong equally to the proponents and opponents of the proposition, and the use of the funds to finance not the presentation of facts merely but also arguments to persuade the voters that only one side has merit, gives the dissenters just cause for complaint. The expenditure is then not within the implied power and is not lawful in the absence of express authority from the Legislature.

*Id.* at 677.[8]  *See also Ameritel Inns, Inc. v. Greater Boise Auditorium Dist.*, 119 P.3d 624, 628-29 (Idaho 2005); *Mines v. DelValle*,  257 P. 530, 537 (Cal. 1927) ("[t]o use said public funds to

---

[8]

The Delaware Supreme Court cited *Citizens to Protect Public Funds* favorably in a decision finding that an advertisement did not violate Delaware's Constitution sufficiently to justify overturning the election. *Brennan v. Black*, 104 A.2d 777, 790 (Del. 1954). *Brennan* was limited to state constitutional law, and did not address statutory municipal law.  Under Delaware municipal law, "[i]t is settled that a municipal corporation has no authority beyond that which is expressly granted or fairly implied or indispensable to its declared objects and purposes."  *Mayor & Council of Wilmington v. Smentkowski*, 198 A.2d 685, 686 (Del. 1964); *Mayor & Council of Wilmington v. Dukes*, 157 A.2d 789, 794 (Del. 1960).

16

advocate the adoption of a [bond] proposition which was opposed by a large number of said electors would be manifestly unfair and unjust to the rights of said last-named electors, and the action of the board of public service commissioners in so doing cannot be sustained, unless the power to do so is given to said board in clear and unmistakable language"); *Elsenau v. City of Chicago*,165 N.E. 129, 131 (Ill. 1929).

Defendants have not pointed to any provision of the Charter or other source granting express authority to Rehoboth to utilize taxpayer funds for such advocacy ads to persuade voters in connection with a referendum or election. In the absence of such express authority, Rehoboth cannot rely on implied authority, and so the Complaint states a claim.

## V.    ABSTENTION IS NOT WARRANTED AS THE COMPLAINT DOES NOT ASSERT ANY VIOLATIONS OF DELAWARE'S CONSTITUTION.

Although, as Defendants recognize, the Amended Complaint withdrew claims based on Delaware's Constitution, Defendants maintain there remains an issue of Delaware constitutional law which requires abstention. Defendants are wrong.

In the Amended Complaint, Ms. Nichols does not claim that, under Delaware's Constitution, entities may not vote in municipal elections if authorized in the Charter or other law. Ms. Nichols withdrew those claims after subsequent research showed that the provisions of Delaware's Constitution relating to elections do not apply to local elections. *DuPont v. Mills*, 196 A. 160, 175-76 (Del. 1937).

The issue in this case regarding entity voting is a federal constitutional one: whether it is consistent with the constitutional principle of "one person one vote" to permit individuals to have multiple votes by allowing them to hold property through multiple artificial entities. *See Mayor &*

17

*Council of the City of Dover v. Kelley*, 327 A.2d 748, 753 (Del. 1974) (under federal constitution, "a statute or city charter which allocates power to voters in an annexation election in proportion to the assessed value of the real estate owned by each voter, and which initially allocates one vote for otherwise qualified voters who do not own real estate, is an infringement or burden upon the right to vote which must be examined under the more strict equal protection standard. We hold that, to withstand that constitutional test, the weighted voting provisions in question must be based upon a compelling state interest and must be necessary to promote that interest, or must be stricken down," footnote omitted).    That does involve any issue of Delaware law, and Defendants have not demonstrated that protection under the Delaware constitution would differ in any meaningful way from the U.S. Constitution.

Further,  abstention is not appropriate, and state law is not to be deemed uncertain, merely because Delaware has not yet considered the law's constitutionality under its own Constitution. *Wisconsin v. Constantineau*, 400 U.S. 433, 439 (1971). *See also Zwickler v. Koota*, 389 U.S. 241, 251 (1967).

Finally, even if the Court finds there to be an important issue of Delaware law that first needs to be resolved, *Pullman* abstention is now deemed to be the less-favored alternative.  Instead, the Court can maintain this action and certify any question of Delaware law to the Delaware Supreme Court pursuant to Delaware Supreme Court Rule 41.  *See Arizonans for Official English v. Arizona*, 520 U.S. 43, 75-76 (1997) (explaining the advantages of certification over abstention). *See also Bellotti v. Baird*, 428 U.S. 132, 149 (1976);  *Allstate Ins. Co. v. Serio*, 261 F.3d 143, 150 (2d Cir.2001) (advocating certification of question to state court as preferable to *Pullman* abstention).

**CONCLUSION**

WHEREFORE, for the forgoing reasons, plaintiff Jackie Nichols respectfully requests that

the Court deny the Defendants' Motion to Dismiss in its entirety.

Respectfully submitted,


/s/ David L. Finger
David L. Finger (DE Bar ID #2556)
Finger & Slanina, LLC
One Commerce Center
1201 N. Orange St., 7th floor
Wilmington, DE  19801-1186
(302) 573-2525
Attorney for Defendant-below/Appellant
Marc Hazout

Dated:   September 9, 2015