## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF DELAWARE

JACKIE NICHOLS,                          )
                                         )
                    Plaintiff,           )
                                         )
          v.                             )          C.A. No. 1:15-cv-00602-GMS
                                         )
THE CITY OF REHOBOTH BEACH,              )
SAM COOPER and SHARON LYNN,              )
                                         )
                    Defendants.          )

### DEFENDANTS' REPLY BRIEF IN SUPPORT OF THEIR
### MOTION TO DISMISS THE AMENDED COMPLAINT

OF COUNSEL:

BAIRD MANDALAS BROCKSTEDT LLC
Glenn C. Mandalas (#4432)
Aaron C. Baker (#5588)
6 South State Street
Dover, DE 19901
Tel: 302-677-0061
glenn@bmde.com
acb@bmde.com

*Solicitors for the City of The*
*City of Rehoboth Beach Delaware*

Dated: September 21, 2015

CONNOLLY GALLAGHER LLP
Arthur G. Connolly, III (#2667)
Max B. Walton (#3876)
Ryan P. Newell (#4744)
N. Christopher Griffiths (#5180)
The Brandywine Building
1000 West Street, 14th Floor
Wilmington, DE 19801
Tel: 302-757-7300
aconnolly@connollygallagher.com
mwalton@connollygallagher.com
rnewell@connollygallagher.com
cgriffiths@connollygallagher.com

*Attorneys for Defendants*

## TABLE OF CONTENTS

**Page**

INTRODUCTION ...........................................................................................................1

ARGUMENT ................................................................................................................1

    I.     THE POST-ELECTION CHALLENGE WAS FILED TOO LATE ......................1

    II.    PLAINTIFF HAS NO STANDING TO MAINTAIN THIS ACTION .................5

    III.   THE STATE IS THE REAL PARTY IN INTEREST ...........................................6

    IV.   COOPER AND LYNN ARE NOT PROPER DEFENDANTS ............................7

    V.    THE NEWSPAPER ADVERTISEMENT ALLEGATIONS
          FAIL TO STATE A CLAIM ..............................................................................8

    VI.   ABSTENTION IS APPROPRIATE ....................................................................9

CONCLUSION ............................................................................................................10

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*4th Generation Ltd. v. Bd. of Adjustment of City of Rehoboth Beach,*
  1987 WL 14867 (Del. Super. Ct. July 16, 1987)............................................7

*Ala. Libertarian Party v. City of Birmingham,*
  694 F. Supp. 814 (N.D. Ala. 1988) .........................................................8, 9

*Ariz. Christian Sch. Tuition Org. v. Winn,*
  563 U.S. 125, 131 S. Ct. 1436 (2011) ......................................................6

*Bennett v. Mollis,*
  590 F. Supp. 2d 273 (D. R.I. 2008) ........................................................3

*Berg v. Obama,*
  586 F.3d 234 (3d Cir. 2009) ..................................................................5

*Carlson v. Ritchie,*
  830 N.W.2d 887 (Minn. 2013) ..............................................................3

*Clay v. Fort Wayne Cmty. Schs.,*
  76 F.3d 873 (7th Cir. 1996)..................................................................6

*Costello v. United States,*
  365 U.S. 265 (1961) ..........................................................................3

*Coughlin v. Ryder,*
  260 F. Supp. 256 (E.D. Pa. 1966)...........................................................5

*Doe v. Madison Sch. Dist.,*
  177 F.3d 789 (9th Cir. 1999) ................................................................6

*Dryer v. NFL,*
  55 F. Supp. 3d 1181 (D. Minn. 2014) ......................................................4

*Evancho v. Fisher,*
  423 F.3d 347 (3d Cir. 2005) .................................................................8

*Francis v. Pan Am. Trinidad Oil Co.,*
  392 F. Supp. 1252 (D. Del. 1975) ..........................................................3

*Fuller v. Volk,*
  351 F.2d 323 (3d Cir. 1965)..................................................................6

*Ga. State Conference of NAACP Branches v. Cox,*
  183 F.3d 1259 (11th Cir. 1999)..............................................................5

*Gjersten v. Bd. of Election Comm'rs*,
    791 F.2d 472 (7th Cir. 1986) ........................................................................4

*Green v. Humphrey Elevator & Truck Co.*,
    816 F.2d 877 (3d Cir. 1987) .........................................................................3

*Harris v. Lykes Bros. S.S. Co., Inc.*,
    375 F. Supp. 1155 (E.D. Tex. 1974) ...........................................................3

*Henderson v. Graham*,
    521 N.E.2d 143 (Ill. App. Ct. 1988) ............................................................3

*Hendon v. N.C. State Bd. of Elections*,
    710 F.2d 177 (4th Cir. 1983) ........................................................................2

*Humphreys v. Walsh*,
    248 F. 414 (3d Cir. 1918) .............................................................................3

*Johnson v. Del. Dep't. of Labor*, C.A. No. 12 653 GMS,
    2014 WL 3828439 (D. Del. Aug. 1, 2014 .................................................8

*Johnson v. Robison*,
    415 U.S. 361 (1974) .....................................................................................7

*Jones v. United States*,
    6 Cl. Ct. 531 (1984) .....................................................................................3

*Kay v. Austin*,
    621 F.2d 809 (6th Cir. 1980) ........................................................................5

*King Tonopah Mining Co. v. Lynch*,
    232 F. 485 (D. Nev. 1916) ...........................................................................4

*Lux v. Judd*,
    651 F.3d 396 (4th Cir. 2011) ........................................................................5

*McClafferty v. Portage Count Bd. of Elections*,
    661 F. Supp. 2d 826 (N.D. Ohio 2009) .......................................................4

*Mich. Chamber of Commerce v. Land*,
    725 F. Supp. 2d 665 (W.D. Mich. 2010) .....................................................3

*Mo. Utils. Co. v. City of California*,
    8 F. Supp. 454 (W.D. Mo. 1934) .................................................................4

*Moore v. Tangipahoa Parish Sch. Bd.*,
    507 F. App'x 389  (5th Cir. 2013) ..............................................................10

*Nader 2000 Primary Comm., Inc. v. Hechler*,
    112 F. Supp. 2d 575 (S.D. W. Va. 2000) ................................................4

*NLRB v. A. J. Tower Co.*,
    329 U.S. 324 (1946) ...............................................................................1, 2

*NLRB v. Rossman Farms, Inc.*,
    2005 WL 2650066 (2d Cir. Oct. 17, 2005) ...........................................4

*Oestereich v. Selective Serv. Sys. Local Bd. No. 11*,
    393 U.S. 233 (1968) ................................................................................7

*Petrella v. Metro-Goldwyn-Mayer, Inc.*,
    134 S. Ct. 1962 (2014) ...........................................................................4

*Pro-Football, Inc. v. Harjo*,
    567 F. Supp. 2d 46 (D. D.C. 2008) .........................................................3

*Putter v. Montpelier Pub. Sch. Sys.*,
    697 A.2d 354 (Vt. 1997) ..........................................................................4

*Riggin v. Office of Senate Fair Emp't Practices*,
    61 F.3d 1563 (Fed. Cir. 1995) .................................................................7

*Ross v. State Bd. of Elections*,
    876 A.2d 692 (Md. 2005) .........................................................................5

*Salem Church (Delaware) Assocs. v. New Castle Cnty.*,
    2006 WL 2873745 (Del. Ch. Oct. 8, 2006) ............................................7

*Samuel v. V.I. Joint Bd. of Elections*,
    2013 WL 106686 (D. V.I. Jan. 6, 2013) ...............................................3, 4

*Santana Products Inc. v. Bobrick Washroom Equip. Inc.*,
    401 F.3d 123 (3d Cir. 2005) ....................................................................3

*Shuford v. Ala. State Bd. of Educ.*,
    920 F. Supp. 1233 (M.D. Ala. 1995) .......................................................3

*Simon v. Town of Seaford*,
    197 A. 681 (Del. 1938) .............................................................................7

*Soules v. Kauaians for Nukolii Campaign Comm.*,
    849 F.2d 1176 (9th Cir. 1988) ..............................................................2, 3

*St. Thomas-St. John Bd. of Elections v. Daniel*,
    2007 WL 4901116 (V.I. Sept. 17, 2007) .................................................5

*Tucker v. Burford*,
   603 F. Supp. 276 (N.D. Miss. 1985) ........................................................3

*United States v. City of Cambridge, Md.*,
   799 F.2d 137 (4th Cir. 1986) ..................................................................2

*United States v. Clintwood Elkhorn Mining Co.*,
   553 U.S. 1 (2008) ..................................................................................2

*United States v. One Toshiba Color Television*,
   213 F.3d 147 (3d Cir. 2000) ..................................................................3

*W. Va. Citizens Def. League, Inc. v. City of Martinsburg*,
   483 F. App'x 838 (4th Cir. 2012) ........................................................10

*Weinberger v. Salfi*,
   422 U.S. 749 (1975) ..............................................................................7

*Weyerhaeuser Co. v. Marshall*,
   592 F.2d 373 (7th Cir. 1979) ................................................................7

**Statutes**

22 *Del. C.* §§ 811-815 ................................................................................7

22 *Del. C.* § 836 ......................................................................................7

## INTRODUCTION

Nothing in Plaintiff's answering brief undercuts the conclusion that her post-Special Referenda Election[1] challenge fails to state a claim for at least four reasons. *First*, the challenge is too late. Plaintiff's purported ignorance of the law pre-election does not allow her to bring a post-election challenge. *Second*, Plaintiff lacks standing. She was never denied the ability to vote in the election. Nor does she have separate standing to sue as a mere taxpayer. She, therefore, has no injury sufficient to confer standing. *Third*, the City has no ability to question the constitutionality of its Charter and Plaintiff's failure to sue the party that adopted the law (the State) mandates dismissal of the City. *Fourth*, the underlying actions comport with Delaware law and, to the extent there is any question, this Court should abstain from ruling. For these reasons, and because Plaintiff's post-election challenge undercuts the core principal of electoral finality, Plaintiff's untimely post-election challenge should be rejected.

## ARGUMENT

## I.    THE POST-ELECTION CHALLENGE WAS FILED TOO LATE

At its heart, this case is a post-election challenge about who should have been permitted to register and vote in the already complete Special Referendum Election. The United States Supreme Court has held that these challenges must be brought pre-election:

> In political elections . . . all challenges as to registrants must be made during the intervening [registration] period or at the polls. Thereafter it is too late. . . .[2]

Such post-election challenges are too late because they undercut the finality of elections:

---

[1]    Defendants adopt and incorporate by reference the defined terms set forth in their opening brief in support of their motion to dismiss. D.I. 11.

[2]    *NLRB v. A. J. Tower Co.*, 329 U.S. 324, 331 (1946).

> One of the commonest protective devices is to require that challenges to
> the eligibility of voters be made prior to the actual casting of ballots, so
> that all uncontested votes are given absolute finality. . . . The fact that
> cutting off the right to challenge conceivably may result in the counting of
> some ineligible votes is thought to be far outweighed by the dangers
> attendant upon the allowance of indiscriminate challenges after the
> election.  To permit such challenges, it is said, would . . . destroy the
> finality of the election result, invite unwarranted and dilatory claims by
> defeated candidates and 'keep perpetually before the courts the same
> excitements, strifes, and animosities which characterize the hustings, and
> which ought, for the peace of the community, and the safety and stability
> of our institutions, to terminate with the close of the polls.'[3]

Circuit Courts follow the Supreme Court's pronouncement and hold that "if aggrieved

parties, without adequate explanation, do not come forward before the election, they will be

barred from the equitable relief of overturning the results of the election."[4]  This is true even if a

constitutional violation is alleged.[5]  Plaintiff does not distinguish this well-settled law.

Here there is no allegation of any pre-election challenge by Plaintiff whatsoever.  There

was no complaint made to any election official or any appeal to the Board of Elections, to the

Election Commissioner, or to any other tribunal.  Under *Soules*, *Hendon*, and *A. J. Tower Co.*,

this pre-election silence bars a post-election challenge to overturn the Special Referenda

Election.  Plaintiff fails to cite a single case where a post-election challenge to statutory voter

qualifications by a non-government actor (raised for the first time after the election) has been

deemed timely filed and has resulted in the invalidation of an election.[6]  It is simply too late for

---

[3]      *Id.*

[4]      *Soules v. Kauaians for Nukolii Campaign Comm.*, 849 F.2d 1176, 1180 (9th Cir. 1988);
*see Hendon v. N.C. State Bd. of Elections*, 710 F.2d 177, 182-83 (4th Cir. 1983).

[5]      *Soules*, 849 F.2d at 1180; *see also United States v. Clintwood Elkhorn Mining Co.*, 553
U.S. 1, 9 (2008) (a "constitutional claim can become time-barred just as any other claim can").

[6]      The cases cited by Plaintiff are factually and legally distinguishable and in no way
undermine the rule in *Soules*, *Hendon*, and *A. J. Tower Co.*, that a *citizen* may not wait until after
the election to first raise a challenge to statutory provisions regarding who may vote in the
election.  *See United States v. City of Cambridge, Md.*, 799 F.2d 137, 141 (4th Cir. 1986)
(holding that because the United States  has no interest in the outcome of an election, a challenge

the Plaintiff to seek the drastic remedy of post-election invalidation of the Special Referenda

Election based upon who can statutorily register for or vote in the election.[7]

Nor is Plaintiff justified in waiting until after the election to bring suit because she was

purportedly unaware of the claim.  D.I. 13 at 7-8.  Laches has but two elements: (1) inexcusable

delay in bringing suit, and (2) prejudice to the defendant as a result of the delay.[8]  *Ignorance of*

*the law or knowledge of the claim has no bearing on a laches inquiry*.[9]  Thus, when Plaintiff

---

under the Voting Rights Act could be brought post-election); *Mich. Chamber of Commerce v. Land*, 725 F. Supp. 2d 665, 681 (W.D. Mich. 2010) (a pre-election challenge under the First Amendment was not time-barred); *Bennett v. Mollis*, 590 F. Supp. 2d 273, 275, 277 (D. R.I. 2008) (post-election challenge to improperly printed ballots, which allowed a withdrawn candidate to remain on ballot – and where 570 votes were cast for the withdrawn candidate – was not time-barred); *McComb v. Superior Court in and for Cnty. of Maricopa*, 943 P.2d 878, 885-86 (Az. Ct. App. 1997) (holding that when the voting system was changed in June of 1996, and when plaintiffs objected to the change in the United States Justice Department Voting Rights Act approval process, solicited an opinion from the Arizona Attorney General, and continued their non-judicial challenges to the board's decision, a post-election suit was not time-barred); *Shuford v. Ala. State Bd. of Educ.*, 920 F. Supp. 1233, 1241 (M.D. Ala. 1995) (refusing to order a special election and instead providing an additional 90 days to obtain required preclearance to change terms of elected officials); *Tucker v. Burford*, 603 F. Supp. 276, 278 (N.D. Miss. 1985) ("the plaintiffs waived their right to relief with regard to the November, 1983 election by failure to seek pre-election relief, inasmuch as no extraordinary circumstances precluded such action").

[7]    *Soules*, 849 F.2d at 1180; *Samuel v. V.I. Joint Bd. of Elections*, 2013 WL 106686, at *8 (D. V.I. Jan. 6, 2013); *Henderson v. Graham*, 521 N.E.2d 143, 145 (Ill. App. Ct. 1988) (where plaintiffs had 53 days pre-election to challenge a referendum petition, post-election challenge was too late); *Carlson v. Ritchie*, 830 N.W.2d 887, 892 (Minn. 2013) ("[P]etitioners cannot wait until *after* elections are over to raise challenges that could have been addressed *before* the election.").

[8]    *See* D.I. 13 at 8 (citing *United States v. One Toshiba Color Television*, 213 F.3d 147, 157 (3d Cir. 2000)); *Costello v. United States*, 365 U.S. 265, 282 (1961); *Santana Products Inc. v. Bobrick Washroom Equip. Inc.*, 401 F.3d 123, 138 (3d Cir. 2005).  Federal laches law applies in this case.  *See Francis v. Pan Am. Trinidad Oil Co.*, 392 F. Supp. 1252, 1256 (D. Del. 1975); *Humphreys v. Walsh*, 248 F. 414, 418 (3d Cir. 1918) ("Federal courts pursue their own rules of equity procedure and enforce the doctrine without regard to, and, in instances, even within the period of an applicable statute of limitations.").

[9]    *Jones v. United States*, 6 Cl. Ct. 531, 532-33 (1984) ("Where laches is raised, knowledge of the law is imputed to all plaintiffs.  Consequently, professed ignorance of one's legal rights does not justify delay in filing suit."); *Green v. Humphrey Elevator & Truck Co.*, 816 F.2d 877, 884 (3d Cir. 1987); *Pro-Football, Inc. v. Harjo*, 567 F. Supp. 2d 46 (D. D.C. 2008) ("ignorance of one's legal rights is not a reasonable excuse in a laches case"); *Harris v. Lykes Bros. S.S. Co.*,

actually learned of the claim is irrelevant.[10]  The essential element of laches is timeliness,[11] for which Plaintiff bears the burden of demonstrating that she acted with the requisite diligence.[12]  Where, as here, such challenge could have been brought pre-election, Plaintiff cannot meet that burden.  Plaintiff did not act with the required diligence.  Her challenge is inexcusably too late.[13]

Similarly, Plaintiff's "lack of prejudice" argument (D.I. 13 at 8) is unfounded.  To justify the setting aside of an election, the challenger (and not the City) must come forward with evidence of actual prejudice from the challenged circumstances.[14]  Fatally, Plaintiff does not allege that the outcome of the election would have been different "but for" the challenged circumstances.[15]

Even if the burden was on the City to establish prejudice, which it is not, prejudice to the City is readily apparent.  The City relied on the absence of a challenge and expended significant

---

*Inc.*, 375 F. Supp. 1155, 1158 (E.D. Tex. 1974) ("Where the defense of laches is raised, the ignorance of one's legal rights does not excuse a failure to institute suit."); *see also Dryer v. NFL*, 55 F. Supp. 3d 1181, 1203 (D. Minn. 2014) (holding that lack of knowledge does not preclude a finding of laches).

[10]    Plaintiff's citation to *Nader 2000 Primary Committee, Inc. v. Hechler*, 112 F. Supp. 2d 575, 579 n.2 (S.D. W. Va. 2000) is inapposite.  That case is a pre-election challenge relating to First Amendment claims and ballot access.  It has no correlation to this post-election challenge to invalidate a referendum election.

[11]    *Petrella v. Metro-Goldwyn-Mayer, Inc.*, 134 S. Ct. 1962, 1977 (2014).

[12]    *McClafferty v. Portage Count Bd. of Elections*, 661 F. Supp. 2d 826, 839 (N.D. Ohio 2009).

[13]    The 1916 Nevada case of *King Tonopah Mining Co. v. Lynch*, 232 F. 485 (D. Nev. 1916), cited by Plaintiff, has nothing to do with laches or municipal elections – it is a due process/service of process case.  Similarly, *Missouri Utilities Co. v. City of California*, 8 F. Supp. 454 (W.D. Mo. 1934), relates to a challenge to the construction of a municipal electric plant – and the case was dismissed.

[14]    *NLRB v. Rossman Farms, Inc.*, 2005 WL 2650066, at *1 (2d Cir. Oct. 17, 2005).

[15]    Plaintiff must demonstrate that the alleged unconstitutional practice has a "significant impact on the particular election they seek to have declared invalid."  *Gjersten v. Bd. of Election Comm'rs*, 791 F.2d 472, 479 (7th Cir. 1986); *Putter v. Montpelier Pub. Sch. Sys.*, 697 A.2d 354, 357 (Vt. 1997).  Plaintiff bears the burden of establishing that alleged election irregularities "affect or change the result of the election by the questioned votes."  *Samuel v. V.I. Joint Bd. of Elections*, 2013 WL 106686, at *3 (D. V.I. Jan. 6, 2013) (citations omitted).

time and resources in preparing for and overseeing the election – factors that many courts have found to establish the requisite prejudice.[16]   In these circumstances, and when the remedy sought could have been provided pre-election, the prejudice to the City bars a post-election challenge.

As a final matter, no discovery is needed or required to determine whether Plaintiff's post-election challenge is time-barred.  *See contra* D.I. 13 at 6-7.  It was brought post-election without a valid excuse and the challenge is now too late.  When Plaintiff learned of the claim has no bearing on the timeliness inquiry.[17]  With no applicable facts in dispute, the timeliness issue is properly determined on a motion to dismiss.[18]

## II.    PLAINTIFF HAS NO STANDING TO MAINTAIN THIS ACTION

To establish standing, Plaintiff has the burden of demonstrating that she has suffered an injury in fact and that her claims are redressable.[19]  There is no dispute that: (1) Plaintiff has been a property owner since 2011; and (2) she was not denied the opportunity to vote in the election. D.I. 11 at 12; D.I. 13 at 9-11.  Under settled law, because her ability to vote was not infringed, she suffered no injury to her voting interest.[20]  She has no standing.

---

[16]    *Kay v. Austin*, 621 F.2d 809, 813 (6th Cir. 1980) (prejudice caused where State expended significant resources preparing for election); *Ross v. State Bd. of Elections*, 876 A.2d 692, 706 (Md. 2005) ("[t]he State Board likewise was prejudiced because it too relied upon the correctness of the ballots and expended considerable efforts in overseeing the election when Branch's candidacy could have been protested judicially prior to the election"); *St. Thomas-St. John Bd. of Elections v. Daniel*, 2007 WL 4901116, at *7 (V.I. Sept. 17, 2007) (prejudice where a timely challenge would have allowed "ample time for a revised ballot to be prepared for the special election").

[17]    *See supra* n. 8.

[18]    There is no dispute that the Court may consider laches on a motion to dismiss.  D.I. 13 at 1; *see also Coughlin v. Ryder*, 260 F. Supp. 256, 260 (E.D. Pa. 1966) (motion to dismiss is proper where laches can be determined without the necessity for further factual inquiry).

[19]    *Berg v. Obama*, 586 F.3d 234, 239 (3d Cir. 2009).

[20]    *Lux v. Judd*, 651 F.3d 396, 400 (4th Cir. 2011) ("'[T]he purest reason to deny' voter standing 'is that the plaintiff is not able to show an injury to the voter interest.'"); *Ga. State Conference of NAACP Branches v. Cox*, 183 F.3d 1259, 1264 (11th Cir. 1999) (no injury where appellants were never denied the right to vote or access to the ballot); *Alachua Cnty. v. Scharps*,

Plaintiff's attempted invocation of taxpayer standing does not overcome her inability to establish an injury in fact to her voter interest. The "mere fact that a plaintiff is a taxpayer is not generally deemed sufficient to establish standing in federal court."[21] To have taxpayer standing, "the taxpayer must be shown to be suing to prevent a misuse of public funds for this is the only interest which a federal court can protect in a taxpayer's suit."[22]

Plaintiff does not allege that public funds were misused. Instead, Plaintiff's challenges *who* was permitted to vote in the referenda. She does not and cannot contend that it is in any way illegal to spend money to *conduct* the election as it is unquestionably lawful for the City to hold the referendum election. Moreover, Plaintiff challenges the *method* of the election conducted for approval of the bond issuance – not the bond issuance itself. Absent any allegation that it was illegal to *conduct* the election or that the City lacks the authority to issue bonds,[23] the doctrine of taxpayer standing is wholly inapplicable because there is no misuse of public funds. Plaintiff, therefore, lacks standing both as a voter and a taxpayer.

## III.    THE STATE IS THE REAL PARTY IN INTEREST

Plaintiff's failure to sue the State, who passed the law in question, is fatal to her claims against the City because Plaintiff has not sued the real party in interest. D.I. 11 at 10-11. While Plaintiff argues that the City should ignore its Charter (D.I. 13 at 12), Delaware law is clear that

---

855 So. 2d 195, 201 (Fla. Dist. Ct. App. 2003) (citation omitted) ("A party who is not adversely affected by a statute generally has no standing to argue that the statute is invalid.").

[21] *Ariz. Christian Sch. Tuition Org. v. Winn*, 563 U.S. 125, 131 S. Ct. 1436, 1437 (2011).

[22] *Fuller v. Volk*, 351 F.2d 323, 327 (3d Cir. 1965); *Doe v. Madison Sch. Dist.*, 177 F.3d 789, 793 (9th Cir. 1999) ("'taxpayer standing,' by its nature, requires an injury resulting from a government's expenditure of tax revenues"); *Clay v. Fort Wayne Cmty. Schs.*, 76 F.3d 873, 879 (7th Cir. 1996) ("Municipal taxpayer status does not confer standing absent some allegation by the plaintiffs of an illegal use of tax revenues.").

[23] The general rule is "that taxpayers lack standing to object to expenditures alleged to be unconstitutional." *Ariz. Christian Sch. Tuition Org.*, 131 S. Ct. at 1445.

municipalities may not act in contravention of State law.[24]  The concept that the City could

unilaterally determine the constitutionality of its enabling Charter (D.I. 13 at 12) is flatly wrong

under settled law because a municipality (whose powers are derived from the State),[25] has no

power or authority to declare a State statute unconstitutional.[26]  This is especially true when

determining the constitutionality of enabling legislation or charters.[27]  The State, the real party in

interest, has set the voting requirements and the City has no choice but to follow them.[28]

## IV.    COOPER AND LYNN ARE NOT PROPER DEFENDANTS

Plaintiff admits that the factual allegations as to Cooper and Lynn consist of one lone

sentence as to each in the Amended Complaint.[29]  Somehow, Plaintiff still insists that Cooper

---

[24]    *4th Generation Ltd. v. Bd. of Adjustment of City of Rehoboth Beach,* 1987 WL 14867, at *8 (Del. Super. Ct. July 16, 1987) (it is "well settled . . .  that a municipality cannot act in conflict with State laws. . . . [T]he State, as sovereign, is the original source of the legislative power. . ."); *Salem Church (Delaware) Assocs. v. New Castle Cnty.*, 2006 WL 2873745, at *7 n.62 (Del. Ch. Oct. 8, 2006) ("a county agency, within our governmental hierarchy . . .  has no apparent authority to avoid the obvious consequences of a state statute").

[25]    *Simon v. Town of Seaford*, 197 A. 681, 685 (Del. 1938).

[26]    *Weinberger v. Salfi*, 422 U.S. 749, 765 (1975) (holding that "a matter of constitutional law . . .  is beyond the Secretary's competence"); *Johnson v. Robison*, 415 U.S. 361, 368 (1974) ("'(a)djudication of the constitutionality of congressional enactments has generally been thought beyond the jurisdiction of administrative agencies"); *Oestereich v. Selective Serv. Sys. Local Bd. No. 11*, 393 U.S. 233, 242 (1968) (same).

[27]    *Riggin v. Office of Senate Fair Emp't Practices*, 61 F.3d 1563, 1569-70 (Fed. Cir. 1995) ("[a] finding that the agency lacks jurisdiction to decide constitutional questions is especially likely when the constitutional claim asks the agency to act contrary to its statutory charter . . ."); *Weyerhaeuser Co. v. Marshall*, 592 F.2d 373, 376 (7th Cir. 1979) ("An agency has no particular expertise to decide on the constitutionality of its own enabling act").

[28]    Contrary to Plaintiff's claims, the City cannot change its Charter without the General Assembly's legislative action.  D.I. 13 at 12.  The City is not a home rule municipality established pursuant to Title 22, Chapter 8 of the Delaware Code.  D.I. 11 at 10, n.19.  To qualify, municipalities were required to submit their Charters on or before 1963.  22 *Del. C.* § 836.  The City never made such filing; it has no power to amend its Charter by referendum.  Its Charter, therefore, contains no provisions allowing for amendment by referendum vote.  *See* 22 *Del. C.* §§ 811-815.

[29]    D.I. 13 at 15. Unlike Cooper and Lynn, the City is not contending the sufficiency of the pleadings.  However, for the reasons set forth in its opening brief and here, the Amended Complaint should be dismissed in its entirety as to the City.

and Lynn should be personally liable for civil rights violations and suggests it is sufficient to plead that Cooper and Lynn "acting under color of state law, caused the deprivation of a federal right."[30]  However, Plaintiff has not pled allegations identifying how Cooper and Lynn actually implemented the policies at issue.  This deficiency is fatal to Plaintiff's claims.

In a civil rights case, the plaintiff must identify what the individual did and not "merely hypothesize[] that [the government official] may have been somehow involved simply because of his [governmental] position . . . ."[31]  With no allegations about how Cooper and Lynn allegedly implemented the policies, the Amended Complaint should be dismissed as to them.

## V.    THE NEWSPAPER ADVERTISEMENT ALLEGATIONS FAIL TO STATE A CLAIM

By arguing that the City needs express authority under state law to publicly endorse the Ocean Outfall Project,[32] Plaintiff disregards both the City's well-established right under Federal case law and its express authority under State law.  First, Plaintiff misses the fundamental point raised in the Defendants' opening brief – under Federal case law, the City "had the right, if not the duty, to advise its citizens of the benefits proposed" in the Special Referenda Election.[33]  As

---

[30]    *Id.* at 14.

[31]    *Evancho v. Fisher*, 423 F.3d 347, 353 (3d Cir. 2005) (citation omitted) ("The Third Circuit has held that a civil rights complaint is adequate where it states the conduct, time, place, and persons responsible;" "it is not possible for [defendant], in his individual capacity, to frame an answer to [plaintiff's] amended complaint because it alleges no specific act by him"). Conclusory allegations do not constitute well-pled allegations and should not be accepted as true. *Johnson v. Del. Dep't of Labor*, C.A. No. 12 653 GMS, 2014 WL 3828439, at *3 (D. Del. Aug. 1, 2014) (plaintiff "obliged 'to provide the grounds of his entitle[ment] to relief'" beyond 'labels and conclusions.'").  But here the Amended Complaint falls short of even conclusory allegations that Cooper and Lynn must have in fact implemented the policies at issue.

[32]    D.I. 13 at 16-17.

[33]    *Ala. Libertarian Party v. City of Birmingham*, 694 F. Supp. 814, 820 (N.D. Ala. 1988) ("Defendants therefore argue that the City had the right, if not the duty, to advise its citizens of the benefits proposed.  This court agrees.  The [proposals at issue in the special referenda election] were services which the City sought to provide to all of its citizens.  Clearly, the City has the responsibility to determine when improvements are necessary or desirable and to express

the Court in *Alabama Libertarian Party* reasoned, "[o]ne could reasonably suggest that to forbid [the City] the right to support by advertising [its] position, initiated by [its] own resolution or ordinance, would be violative of [the City's] own First Amendment rights."[34]

Second, Plaintiff mistakenly contends that the City lacked the express authority[35] under Delaware law to endorse the Ocean Outfall Project. On the contrary, according to the Charter, when the City passed the resolution establishing the Special Referenda Election to consider the Ocean Outfall Project, under Delaware law, that resolution constituted the City's endorsement of the Ocean Outfall Project.[36] The Charter then requires the City to make the residents aware through public notice of the Special Referenda Election and, by extension, its support thereof.[37] The City's decision to advocate its position in the Newspaper Advertisement is consistent with that express authority.

## VI.    ABSTENTION IS APPROPRIATE

Abstention is appropriate, where, as here, an important question of State law is at issue. D.I. 11 at 16 n.43. Provisions allowing entity property owners to vote in municipal referenda

---

its determination of those needs to the public. In order to implement such proposed benefits, a municipality must attempt to secure the funds from its citizenry. The ads at issue in the instant action merely amount to a solicitation of the necessary funds."); *see also* D.I. 11 at 15 n.42.

[34]    694 F. Supp. at 820.

[35]    Generally, the Charter broadly gives the City, through its Commissioners, "all . . . powers and functions requisite to or appropriate for the government of the City . . . ." D.I. 11, Ex. A at Section 1(b); *see also id.* at Section 1(d) ("The enumeration of particular powers by this Charter shall not be held to be exclusive, or to restrict, in any way, the general powers conferred herein. . . . it is intended that The Commissioners of Rehoboth shall have and may exercise all powers which, under the Constitution of the State of Delaware, it shall be competent for this Charter specifically to enumerate.").

[36]    *Id.* at Section 40(f) ("[t]he passing of the . . . resolution shall, ipso facto, be considered the determination of the Commissioners of Rehoboth Beach to proceed in the matter in issue").

[37]    *Id.* at Section 40(g). Even if the Newspaper Advertisement failed to mention the City's support of the Ocean Outfall Project, by passing the resolution establishing the Special Referenda Election, the City had already publicly placed its support behind the Ocean Outfall Project.

9

elections, like the one challenged here, are contained within several municipal Charters adopted by the Delaware General Assembly.  D.I. 11 at 19 n.53.  If entity property owners are entitled to vote under Delaware law, there is no constitutional question for this Court to decide because there is no violation of the one man, one vote principle.  Thus, for the reasons stated in the opening brief (D.I. 11 at 19), if the case is not otherwise dismissed, abstention is appropriate.[38]

## **CONCLUSION**

For the reasons stated in their opening and reply briefs, Defendants respectfully request that the Amended Complaint be dismissed with prejudice or, in the alternative, that this case be stayed under the *Pullman* doctrine.

|  | CONNOLLY GALLAGHER LLP |
|---|---|
|  | */s/ Max B. Walton* |
|  | Arthur G. Connolly, III (#2667) |
| OF COUNSEL: | Max B. Walton (#3876) |
|  | Ryan P. Newell (#4744) |
| BAIRD MANDALAS BROCKSTEDT LLC | N. Christopher Griffiths (#5180) |
| Glenn C. Mandalas (#4432) | The Brandywine Building |
| Aaron C. Baker (#5588) | 1000 West Street, 14th Floor |
| 6 South State Street | Wilmington, DE 19801 |
| Dover, DE 19901 | Tel: 302-757-7300 |
| Tel: 302-677-0061 | aconnolly@connollygallagher.com |
| glenn@bmbde.com | mwalton@connollygallagher.com |
| acb@bmde.com | rnewell@connollygallagher.com |
|  | cgriffiths@connollygallagher.com |
| *Solicitors for the City of The* |  |
| *City of Rehoboth Beach Delaware* |  |
|  |  |
| Dated: September 21, 2015 | *Attorneys for Defendants* |

---

[38]    Plaintiff asserts that certification is preferable to abstention.  D.I. 13 at 18.  While either method is appropriate, *Pullman* abstention remains appropriate for State Court determination of important questions of State law.  *Moore v. Tangipahoa Parish Sch. Bd.*, 507 F. App'x 389, 396 (5th Cir. 2013); *W. Va. Citizens Def. League, Inc. v. City of Martinsburg*, 483 F. App'x 838, 839-40 (4th Cir. 2012).